**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 2, 2007

JOANNE ROWLAND, also known as
JOAN ROWLAND,

      Plaintiff-Appellee,

v

No. 130379

WASHTENAW COUNTY ROAD
COMMISSION,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

TAYLOR, C. J.

The issue in this case is whether a notice provision applicable to the defective highway exception to governmental immunity, MCL 691.1404(1), should be enforced as written. This statute provides in pertinent part:

> As a condition to any recovery for injuries sustained by reason of any defective highway, the injured person, within 120 days from the time the injury occurred, . . . shall serve a notice on the governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant.

We conclude that the plain language of this statute should be enforced as written: notice of the injuries sustained and of the highway defect must be served on the governmental agency within 120 days of the injury. This Court previously held in *Hobbs v Dep't of State Hwys*, 398 Mich 90, 96; 247 NW2d 754 (1976), and *Brown v Manistee Co Rd Comm*, 452 Mich 354, 356-357; 550 NW2d 215 (1996), that absent a showing of actual prejudice to the governmental agency, failure to comply with the notice provision is not a bar to claims filed pursuant to the defective highway exception. Those cases are overruled.

Accordingly, the order of the trial court denying summary disposition to defendant on the basis of *Hobbs/Brown* is reversed, the judgment of the Court of Appeals affirming the trial court's order is also reversed, and the case is remanded to the trial court for the entry of an order granting defendant summary disposition because plaintiff failed to provide notice within 120 days "[a]s a condition to any recovery" for injuries she claims she sustained by reason of a defective highway.

I. FACTS AND PROCEDURAL HISTORY

On February 6, 2001, plaintiff Joan Rowland fell and was injured while crossing Jennings Street at its intersection with Main Street in Northfield Township in Washtenaw County. Plaintiff alleged that she tripped and fell on "broken, uneven, dilapidated, depressed and/or potholed areas."

Plaintiff served her notice on defendant Washtenaw County Road Commission on the 140th day after the accident and subsequently filed a lawsuit against defendant asserting the applicability of the defective highway exception to

2

governmental immunity.  MCL 691.1402.  Defendant road commission filed an answer and affirmative defenses that raised MCL 691.1404 (failure to serve notice within 120 days) as a defense.  Defendant subsequently moved for summary disposition pursuant to MCR 2.116(C)(7) (immunity granted by law) and 2.116(C)(10) (no genuine issue of material fact), arguing, among other things, that plaintiff's failure to comply with MCL 691.1404(1) entitled it to summary disposition.

Relying on *Hobbs/Brown* (defendant must show prejudice before the statute can be enforced) the trial court determined that there was a genuine issue of material fact concerning whether defendant had shown prejudice and thus denied the road commission's motion for summary disposition.

The Court of Appeals affirmed the order of the trial court.[1]  Defendant urged the panel to disregard the *Hobbs* and *Brown* construction of MCL 691.1404 on the basis that those cases were wrongly decided.  The Court of Appeals, however, noted that it was duty-bound to follow this Court's construction of MCL 691.1404 and that the decisions were binding unless the Supreme Court overruled them.

---

[1] Unpublished opinion per curiam, issued December 13, 2005 (Docket No. 253210).

3

The road commission filed an application for leave to appeal, which this Court granted.[2]

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to deny a motion for summary disposition. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005). Questions of statutory interpretation are also reviewed de novo. *Id.* When construing a statute, this Court's primary goal is to give effect to the intent of the Legislature. We begin by construing the language of the statute itself. When the language is unambiguous, we give the words their plain meaning and apply the statute as written. *In re MCI Telecom Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999).

## III. ANALYSIS

### a. GOVERNMENTAL IMMUNITY AND THE DEFECTIVE HIGHWAY EXCEPTION

It is well understood, and not challenged here, that governmental agencies, with a few exceptions, are generally statutorily immune from tort liability. The governmental tort liability act (GTLA), MCL 691.1401 *et seq.,* broadly shields a governmental agency from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). The act enumerates several exceptions to governmental immunity that permit a

---

[2] 474 Mich 1099 (2006).

4

plaintiff to pursue a claim against a governmental agency.[3]  Our decision in this case requires us to examine MCL 691.1404.  As previously indicated, the statute provides:

> As a condition to any recovery for injuries sustained by reason of any defective highway, the injured person, within 120 days from the time the injury occurred, except as otherwise provided in subsection (3)[4] shall serve a notice on the governmental agency of the occurrence of the injury and the defect. The notice shall specify

[3] The Legislature codified the following six exceptions in the GTLA: the defective highway exception, MCL 691.1402; the motor vehicle exception, MCL 691.1405; the public building exception, MCL 691.1406; the proprietary function exception, MCL 691.1413; the governmental hospital exception, MCL 691.1407(4); and the sewage disposal system exception, MCL 691.1417.  Further, as we recognized in *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002), there are other areas outside the GTLA where the Legislature has allowed specific actions against a governmental agency notwithstanding governmental immunity, such as the Civil Rights Act.  MCL 37.2103(g) and 37.2202(1)(a).

[4] Subsection 3 provides:

> If the injured person is under the age of 18 years at the time the injury occurred, he shall serve the notice required by subsection (1) not more than 180 days from the time the injury occurred, which notice may be filed by a parent, attorney, next friend or legally appointed guardian. If the injured person is physically or mentally incapable of giving notice, he shall serve the notice required by subsection (1) not more than 180 days after the termination of the disability. In all civil actions in which the physical or mental capability of the person is in dispute, that issue shall be determined by the trier of the facts. The provisions of this subsection shall apply to all charter provisions, statutes and ordinances which require written notices to counties or municipal corporations.

One amicus curiae argues in its brief that requiring notice after only four months is unreasonable because injured persons may still be incapacitated.  But, this concern is addressed by subsection 3, which allows someone who is physically or mentally incapable of giving notice to serve notice not more than 180 days after the termination of the disability.

the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant. [MCL 691.1404(1).]

Plaintiff, having served her notice 140 days after her fall, acknowledges that she did not serve a notice on the road commission within 120 days of her accident. Given that the plain language of the statute requires such notice as a condition for recovery for injuries sustained because of a defective highway, one merely reading the statute might assume that plaintiff's complaint would have been dismissed. Because this Court's decisions in *Hobbs* and *Brown* engrafted an actual prejudice component onto the statute, the trial court could not dismiss the case.[5] It is valuable in considering the defensibility of this interpretation of the statute to first survey this Court's cases concerning notice provisions, including the provision at issue here.

---

[5] Justice Kelly contends in her partial dissent that we should avoid revisiting *Hobbs* and *Brown* by holding that plaintiff's notice itself was defective because it did not identify the nature of the defect of the highway, not because it was not served within 120 days. We disagree because the first question is whether the Legislature can even enact a notice provision with a hard and fast deadline. If it can, an issue we examine in this opinion, then there is no need to determine the second question of whether the late-filed notice in this case would have been adequate if it had been filed in a timely manner. While Justice Kelly accuses us of reaching unnecessary constitutional rulings, we believe it is more accurate to say that we have merely engaged in statutory analysis. But, to be able to apply the statute to the case at bar we have to dispatch the erroneous constitutional readings that were erected by the *Hobbs/Brown* courts to prevent us from engaging in a statutory analysis. Moreover, defendant specifically argued that plaintiff failed to comply with the 120-day notice provision of MCL 691.1404(1) in its motion for summary disposition and the trial court and the Court of Appeals relied on *Hobbs/Brown* to not enforce the statute. Under such circumstances, it is entirely proper for this Court to review whether *Hobbs* and *Brown* were properly decided.

### b. HISTORY OF THIS COURT'S CASELAW INVOLVING NOTICE STATUTES

From its earliest years this Court, evidently detecting no constitutional impediments, if indeed any were even urged, enforced governmental immunity mandatory notice provisions according to their plain language.  See, e.g., *Davidson v City of Muskegon,* 111 Mich 454; 69 NW 670 (1897); *Holtham v Detroit*, 136 Mich 17; 98 NW 754 (1904); *Wilton v Detroit*, 138 Mich 67; 100 NW 1020 (1904); *Barribeau v Detroit*, 147 Mich 119; 110 NW 512 (1907); *McAuliff v Detroit*, 150 Mich 346; 113 NW 1112 (1907); *Ridgeway v Escanaba,* 154 Mich 68; 117 NW 550 (1908); *Moulter v Grand Rapids,* 155 Mich 165; 118 NW 919 (1908); *Northrup v City of Jackson*, 273 Mich 20; 262 NW 641 (1935); *Sykes v Battle Creek*, 288 Mich 660; 286 NW 117 (1939);  *Trbovich v Detroit*, 378 Mich 79; 142 NW2d 696 (1966); *Morgan v McDermott*, 382 Mich 333; 169 NW2d 897 (1969).

The leading cases upholding notice provisions are *Moulter*, *Trbovich,* and *Morgan.*  In *Moulter,* this Court held that the right to recover for injuries arising from the lack of repair to sidewalks, streets, highways, and so forth, was purely statutory and that it was discretionary with the Legislature whether it would confer upon injured persons a right of action.  Moreover, any rights given to sue the government could be subject to limitations the Legislature chose.  The implicit theory was that such notice provisions were economic or social legislation and that, because the Legislature had a rational basis for the notice requirements—the

most obvious being facilitating meaningful investigations regarding the conditions at the time of injury and allowing for quick repair so as to preclude other accidents—the statutes were constitutionally permissible. Further, in *Trbovich* the Court indicated that for the Court to not accede to the Legislature's authority in this fashion would be to unconstitutionally usurp legislative authority. Finally, in *Morgan* the Court reaffirmed that the then 60-day notice requirement in defective highway cases was simply a condition of liability and that, unless it was fulfilled, there was no liability.[6]

As of 1969, therefore, the enforceability of notice requirements and the particular notice requirements in governmental immunity cases was well settled and had been enforced for almost a century. In 1970, however, there was an abrupt departure from these holdings in the Court's decision in *Grubaugh v City of St Johns*, 384 Mich 165; 180 NW2d 778 (1970). In *Grubaugh* the Court discerned an unconstitutional due process deprivation if plaintiffs suing governmental defendants had different rules than plaintiffs suing private litigants. As a result, *Moulter* was not followed.[7]

---

[6] See also *Kraus v Kent Co Bd of Rd Comm'rs*, 385 F2d 864 (CA 6, 1967), upholding dismissal of an action in a diversity case because of noncompliance with the notice statute.

[7] Actually, the lead opinion in *Grubaugh* stated that *Moulter* was overruled. But, the lead opinion was only signed by three justices and two other justices only concurred in the result. Under such circumstances, *Grubaugh* was not binding precedent. As this Court explained in *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976), decisions in which no majority of the justices participating agree

(continued…)

Two years later, in *Reich v State Hwy Dep't*, 386 Mich 617; 194 NW2d 700 (1972), the Court took *Grubaugh* one step further and held that an earlier version of MCL 691.1404, which included a 60-day notice provision, was unconstitutional, but this time because it violated equal protection guarantees. The analysis again was that the constitution forbids treating those injured by governmental negligence differently from those injured by a private party's negligence. Leaving aside the unusual switch from one section of the constitution to another to justify an adjudication of unconstitutionality, this claim is simply incorrect. Private and public tortfeasors can be treated differently in the fashion they have been treated here by the Legislature. It does not offend the constitution to do so because with economic or social regulation legislation, such as this statute, there can be distinctions made between classes of persons if there is a rational basis to do so. As we explained in *Phillips v Mirac, Inc*, 470 Mich 415, 431-433; 685 NW2d 174 (2004), legislation invariably involves line drawing and social legislation involving line drawing does not violate equal protection guarantees when it has a "rational basis," i.e., as long as it is rationally related to a legitimate governmental purpose. The existence of a rational basis here is clear, as we will discuss more fully, but even the already cited justification, that the road be repaired promptly to prevent further injury, will suffice.

---

(…continued)
with regard to the reasoning are not an authoritative interpretation under the doctrine of stare decisis.

9

Considering the same point, Justice Brennan in his dissent in *Reich* pithily pointed out the problems with the majority's analysis:

> The legislature has declared governmental immunity from tort liability. The legislature has provided specific exceptions to that standard. The legislature has imposed specific conditions upon the exceptional instances of governmental liability. The legislature has the power to make these laws. This Court far exceeds its proper function when it declares this enactment unfair and unenforceable. [386 Mich at 626.]

The next year, in *Carver v McKernan*, 390 Mich 96; 211 NW2d 24 (1973), the Court retreated from *Grubaugh* and *Reich* and, in a novel ruling, held that application of the six-month notice provision in the Motor Vehicle Accident Claims Act (MVACA), MCL 257.1118, was constitutional, and that the provision was thus enforceable, only where the failure to give notice resulted in prejudice to the party receiving the notice, in that case the Motor Vehicle Accident Claims Fund (MVACF). The reasoning was that while some notice provisions may be constitutionally permitted some may not be, depending on the purpose the notice serves. Thus, if notice served a permissible purpose, such as to prevent prejudice, it passed constitutional muster. But, if it served some other purpose (the Court could not even imagine any other) then the notice required by the statute became an unconstitutional legislative requirement. Thus, the Court concluded that in order to save the statute from being held unconstitutional, it had to allow notice to be given after six months and still be effective unless the governmental agency, there the MVACF, could show prejudice. Whatever a court may do to save a statute from being held to be unconstitutional, it surely cannot engraft an

10

amendment to the statute, as was done in *Carver*. See, e.g., *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 408 n 14; 578 NW2d 267 (1998). Notwithstanding these problems, they went unnoticed and the rule now was "only upon a showing of prejudice by failure to give such notice, may the claim against the fund be dismissed." *Carver,* 390 Mich at 100.

Returning to the *Carver* approach in 1976, this Court in *Hobbs,* 398 Mich at 96, held regarding the notice requirement in the defective highway exception to governmental immunity:

> The rationale of *Carver* is equally applicable to cases brought under the governmental liability act. Because actual prejudice to the state due to lack of notice within 120 days is the only legitimate purpose we can posit for this notice provision, absent a showing of such prejudice the notice provision contained in [MCL 691.1404] is not a bar to claims filed pursuant to [MCL 691.1402].

Finally, in 1996, in *Brown*, this Court reassessed the propriety of the *Hobbs* decision and declined to overrule it on the basis of stare decisis and legislative acquiescence.[8]

---

[8] Justices Riley and Boyle dissented from the Court's holding. Justice Weaver did not participate, presumably because she had participated in the case as a Court of Appeals judge.

Justice Kelly and Justice Cavanagh argue that legislative acquiescence should save *Hobbs* and *Brown'*s erroneous construction of the notice statute. But, it has been the rule in Michigan since at least *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 596 NW2d 574 (1999), that the doctrine of legislative acquiescence is not recognized in this state. As we noted in *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 177-178 n 33; 615 NW2d 702 (2000), the legislative acquiescence doctrine "'is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legislature's intent from its words, not from its silence.'" (Citation omitted; (continued…)

11

(…continued)

emphasis omitted.) Justice Kelly's professed fealty to stare decisis apparently would not prevent her from overruling sub silentio all the cases where we rejected the legislative acquiescence doctrine. See, e.g., *Donajkowski*; *People v Borchard-Ruhland,* 460 Mich 278, 286; 597 NW2d 1 (1999); *Robinson v Detroit,* 462 Mich 439, 466; 613 NW2d 307 (2000); *Nawrocki, supra*; *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 502; 638 NW2d 396 (2002); *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 760; 641 NW2d 567 (2002); *People v Hawkins*, 468 Mich 488, 506-507; 668 NW2d 602 (2003); *Neal v Wilkes*, 470 Mich 661, 668 n 11; 685 NW2d 648 (2004); *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 592; 702 NW2d 539 (2005); *Grimes v Dep't of Transportation*, 475 Mich 72, 84; 715 NW2d 275 (2006); *People v Anstey*, 476 Mich 436, 445; 719 NW2d 579 (2006); *Paige v Sterling Hts*, 476 Mich 495, 516; 720 NW2d 219 (2006).

Furthermore, in a circumstance such as here, where the Court has said the constitution precludes the Legislature from doing as it wishes (thus making the desired legislative action impossible) a legislative acquiescence argument is entirely misbegotten. Justice Kelly claims that the Legislature could have simply reenacted the statute after identifying an additional intent. We disagree. First, the *Hobbs* Court said the "only" legitimate reason it could surmise for the notice statute was to prevent prejudice to the government. Inescapably this must be read to mean that other reasons would not be found legitimate. Thus, adding another reason would hardly be seen as a viable option for the Legislature. In any event, the Legislature is not required to indicate in a statute what its motivations are. Rather, it is a court's duty in "rational basis" cases such as this to find constitutionality if """"any state of facts either known or which could reasonably be assumed affords support"""" for the statute. *Brown, supra* at 362 (citations omitted). Justice Kelly herself has said this. *Harvey v Michigan* 469 Mich 1, 13-14; 664 NW2d 767 (2003).

Justice Kelly also argues that the Legislature could have amended the statute to include a presumption of prejudice. Revising the statute in such a manner, however, would not have produced what the Legislature wanted—a statute with a clearly identified and readily enforceable deadline that does not require a showing of prejudice or anything else to be enforceable.

12

## c. *HOBBS* AND *BROWN* WERE WRONGLY DECIDED AND POORLY REASONED

The simple fact is that *Hobbs* and *Brown* were wrong because they were built on an argument that governmental immunity notice statutes are unconstitutional or at least sometimes unconstitutional if the government was not prejudiced. This reasoning has no claim to being defensible constitutional theory and is not rescued by musings to the effect that the justices "'look askance'" at devices such as notice requirements, *Hobbs,* 398 Mich at 96, quoting *Carver,* 390 Mich at 99, or the pronouncement that other reasons that could supply a rational basis were not to be considered because in the Court's eyes the "only legitimate purpose" of the notice provisions was to protect from "actual prejudice." *Hobbs*, 398 Mich at 96.

Perceiving the error of the majority, Justice Riley explained in her dissent in *Brown* that this notice statute is social legislation that is constitutional because it has a rational basis. She stated:

> I note that "[w]hen scrutinizing economic and social legislation, this Court applies the rational basis standard of review." *Downriver Plaza Group v Southgate*, 444 Mich 656, 666; 513 NW2d 807 (1994). The only inquiry, then, is whether this social legislation creating a 120-day notice requirement has a rational basis.

> This particular legislation passes the minimal rational basis test, and the Court in *Hobbs* was without authority to require a showing of prejudice in each and every case. Notice provisions rationally and reasonably provide the state with the opportunity to investigate and evaluate a claim. [452 Mich at 370.]

Because the statute was constitutional, no "saving construction" was necessary or allowed. Thus, the engrafting of the prejudice requirement onto the statute was entirely indefensible.

Further, in the search for a legitimate purpose for notice provisions, the holding in *Ridgeway v Escanaba*, 154 Mich 68, 72-73; 117 NW 550 (1908), is also instructive. It was there that this Court gave a full-throated statement of the purpose it discerned:

> We must say that the legislature intended to give to defendants in such cases some protection against unjust raids upon their treasuries by unscrupulous prosecution of trumped-up, exaggerated, and stale claims, by requiring a claimant to give definite information to the city or village against whom it is asserted, at a time when the matter is fresh, conditions unchanged, and witnesses thereto and to the accident within reach. It is a just law, necessary to the protection of the taxpayer, who bears the burden of unjust judgments. It requires only ordinary knowledge and diligence on the part of the injured and his counsel, and there is no reason for relieving them from the requirements of this statute that would not be applicable to any other statute of limitation.

It is also useful to consider as possible legislative reasons for the notice statute the purposes discussed in the consolidated cases of *Lisee v Secretary of State* and *Howell v Lazaruk*, 388 Mich 32; 199 NW2d 188 (1972). In those cases, while the majority suggested that the purpose of the notice statute was to afford an opportunity to investigate a claim and to determine the possible liability of the MVACF, Justices Brennan and Black dissented in part, pointing out additional reasons, beyond those mentioned by the majority, for requiring notice. These included allowing time for creating reserves for the Fund, reducing the uncertainty

14

of the extent of future demands, or even to force the claimant to an early choice regarding how to proceed.  Because these apply in the context of the MVACF, they could also have been in the minds of the Legislature at the time MCL 691.1404 was enacted.

These likely or even possible reasons cited above must be considered as supplying the rational basis that assures constitutionality, because, as Justice Cavanagh pointed out in *Brown, supra* at 362, reciting the venerable rule in such matters, it is our duty in rational basis cases to find constitutionality if "'any state of facts either known or which could reasonably be assumed affords support'" for the statute.  (Citation omitted.)  It is the case then that there is unquestionably now, and there was then, a "rational basis" for finding, even as Justice Riley did earlier, a rational basis for this statute and the distinctions it draws.

Moreover, common sense counsels that inasmuch as the Legislature is not even required to provide a defective highway exception to governmental immunity, it surely has the authority to allow such suits only upon compliance with rational notice limits.  As this Court stated in *Moulter*:

> It being optional with the legislature whether it would confer upon persons injured a right of action therefor or leave them remediless, it could attach to the right conferred any limitations it chose.  [155 Mich at 168-169.]

In sum, *Moulter* and the other cases previously cited were decided in accordance with the constitution.  The notice provision passes constitutional muster.  We reject the hybrid constitutionality of the sort *Carver*, *Hobbs,* and

*Brown* engrafted onto our law.[9] In reading an "actual prejudice" requirement into the statute, this Court not only usurped the Legislature's power but simultaneously made legislative amendment to make what the Legislature wanted—a notice provision with no prejudice requirement—impossible. *Hobbs* and *Brown* are remarkable in the annals of judicial usurpation of legislative power because they not only seized the Legislature's amendment powers,[10] but also made any

[9] Justice Cavanagh argues that a minority of courts have made similar rulings. We acknowledge as much, but note that the vast majority of jurisdictions that have considered such a constitutional challenge has concluded that notice-of-claim and statute-of-limitations rules placed on persons bringing tort actions against governmental entities are rationally related to reasonable legislative purposes and thus do not violate equal protection. See, e.g., *Tammen v San Diego Co*, 66 Cal 2d 468; 426 P2d 753; 58 Cal Rptr 249 (1967); *Fritz v Regents of Univ of Colorado*, 196 Colo 335; 586 P2d 23 (1978); *McCann v City of Lake Wales*, 144 So 2d 505 (Fla, 1962); *Newlan v State,* 96 Idaho 711; 535 P2d 1348 (1975); *King v Johnson*, 47 Ill 2d 247; 265 NE2d 874 (1970); *Johnson v Maryland State Police*, 331 Md 285; 628 A2d 162 (1993); *Campbell v City of Lincoln*, 195 Neb 703; 240 NW2d 339 (1976); *Espanola Housing Auth v Atencio*, 90 NM 787; 568 P2d 1233 (1977); *Herman v Magnuson*, 277 NW2d 445 (ND 1979); *Reirdon v Wilburton Bd of Ed*, 611 P2d 239 (Okla, 1980); *James v Southeastern Pennsylvania Transp Auth*, 505 Pa 137; 477 A2d 1302 (1984); *Budahl v Gordon & David Assoc*, 287 NW2d 489 (SD, 1980); *City of Waco v Landingham*, 138 Tex 156; 157 SW2d 631 (1941); *Sears v Southworth*, 563 P2d 192 (Utah, 1977). We agree with the majority rule.

[10] As United States Supreme Court Justice John Marshall Harlan stated in his famous dissent in *Plessy v Ferguson*, 163 US 537, 558; 16 S Ct 1138; 41 L Ed 256 (1896):

[T]he courts best discharge their duty by executing the will of the law-making power, constitutionally expressed, leaving the results of legislation to be dealt with by the people through their representatives.

In a more recent iteration of the rule, we stated in *DiBenedetto v West Shore Hosp*, 461 Mich 394; 405; 605 NW2d 300 (2000), that courts may not "rewrite the plain statutory language and substitute our own policy decisions for

(continued…)

reversing amendment by the Legislature impossible. Nothing can be saved from *Hobbs* and *Brown* because the analysis they employ is deeply flawed.[11] According, we must next consider if considerations of stare decisis should cause us to retain this poorly reasoned precedent.

## IV. STARE DECISIS

In determining whether to overrule a prior case, this Court first considers whether the earlier case was wrongly decided. *Robinson v Detroit*, 462 Mich 439, 463-468; 613 NW2d 307 (2000).[12] As we have previously explained, we are

---

(…continued)
those already made by the Legislature." Accord *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 161; 680 NW2d 840 (2004). In short, this Court had no authority to add words or conditions to the statute.

[11] In her dissent Justice Kelly repeats the error of the *Hobbs* and *Brown* courts in concluding that the only rational basis supporting the statute is that which the *Hobbs* and *Brown* courts fixed upon: prejudice to the government tortfeasor. One can only ask, why is this the only allowable rational basis? Must we not use, as the majority has here, the rule that Justice Kelly herself used in *Harvey v Michigan,* that a court must find constitutionality if any state of facts either known or which can reasonably be assumed affords support? Because there are such reasons, beyond what the *Hobbs* and *Brown* courts themselves found, as discussed in this opinion, why does this rule not apply here? Indeed, if as Justice Kelly apparently concludes, it does not, what is her test for when the rule is inapplicable? She gives none. This is not how a court should analyze matters because it makes future application of the law, should her view prevail, entirely without predictability. This is a prescription for chaos and injustice.

[12] See, also, *Halfacre v Paragon Bridge & Steel Co*, 368 Mich 366, 377; 118 NW2d 455 (1962) (Courts have the "right and duty to re-examine *and re-examine again, if need be*, statutory enactments already judicially construed."). (Emphasis added.)

17

persuaded that *Hobbs* and *Brown* were wrongly decided.[13] *Robinson* next instructs that if a case was wrongly decided, the Court should then examine reliance interests: whether the prior decision defies "practical workability"; whether the prior decision has become so embedded, so fundamental to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations; whether changes in the law or facts no longer justify the prior decision; and whether the prior decision misread or misconstrued a statute. *Robinson, supra* at 464-467.

We are convinced, as previously set forth, that the prior decisions did in fact misread and misconstrue the statute and left it less workable, assuming that the goal was to provide notice so as to facilitate investigation, claims resolution, and rapid road repairs, as well as the creation of reserves and the like for self-insured governmental entities. When prompt notice is not provided, the entire legislative scheme is accordingly less workable.

As for reliance, we find insufficient reliance interests to prevent us from overruling *Hobbs* and *Brown*. When one focuses on the practical effect of *Hobbs*

---

[13] Justice Kelly argues that the principle of stare decisis should prevent this Court from overruling *Hobbs* and *Brown*. We note that Justice Kelly's fealty to precedent is quite selective. She shows no concern that *Hobbs* disregarded 75 years of precedent that had upheld governmental immunity notice provisions. Indeed, each of the criticisms Justice Kelly sends our way is actually more applicable to the *Hobbs* Court. If 30 years of precedent should not be lightly ignored, what of the *Hobbs* Court ignoring 75 years of precedent? In any event, we have applied the *Robinson* stare decisis factors and concluded that they do not counsel against overruling *Hobbs* and *Brown*.

18

and *Brown,* it becomes quite evident that injured plaintiffs, otherwise able to file lawsuits, were highly unlikely to have delayed filing their lawsuits for periods longer than 120 days in reliance on these cases. After all, what plaintiff would take the chance that the defendant could actually show prejudice after the 120th day and thus lose his or her cause of action when before that time it would be irrelevant whether there was prejudice? Accordingly, we doubt that any plaintiff, because of the inevitable perils such a delay entails, actually decided to not serve notice within 120 days in reliance on *Hobbs* and *Brown.*

Further, while the rule of *Hobbs* has been uncontradicted for 30 years, any lawyer following the decisions of this Court for the last seven years would know that the "text ignoring" approach manifested in the holdings of *Hobbs* and *Brown* has been repudiated repeatedly in the recent past by this Court. Nowhere was this more forcefully stated than in *Nawrocki, supra*, itself a governmental immunity case involving the defective highway exception, where we said that a court is most strongly justified in overruling precedent when adherence to the precedent would perpetuate a plainly incorrect interpretation of language in a statute. *Nawrocki,* 463 Mich at 181.

*Robinson* also held that any statutory reliance analysis has to be considered in light of the plain language of the statute. We stated:

> Further, it is well to recall in discussing reliance, when dealing with an area of the law that is statutory . . . , that it is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the

19

statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's misconstruction. The reason for this is that the court in distorting the statute was engaged in a form of judicial usurpation that runs counter to the bedrock principle of American constitutionalism, i.e., that the lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives. Moreover, not only does such a compromising by a court of the citizen's ability to rely on a statute have no constitutional warrant, it can gain no higher pedigree as later courts repeat the error. [*Robinson, supra* at 467-468.]

This language from *Robinson* fully supports overruling *Hobbs* and *Brown* because this Court in those cases confounded legitimate citizen expectations by misreading and misconstruing a statute.[14] Accordingly, it was this Court in *Hobbs*

---

[14] We note that Justice Kelly repeats in her partially dissenting opinion the canard that this Court has overruled cases at an alarming rate. As we most recently said in *Paige v Sterling Hts, supra* at 514, the fallacy of these statistical false alarms was demonstrated in *Sington v Chrysler Corp*, 467 Mich 144, 166-170; 648 NW2d 624 (2002), and *Mack v Detroit*, 467 Mich 186, 211; 649 NW2d 47 (2002). Moreover, an article by Victor E. Schwartz, *A critical look at the jurisprudence of the Michigan Supreme Court*, 85 Mich B J 38, 41 (January, 2006), shows the methodological failures of these various "the sky is falling" arguments.

Justice Kelly claims that a study by Todd C. Berg in Michigan Lawyer's Weekly shows that this Court has overruled cases at a rate four times that of previous courts (41 cases overruling precedent out of 13,923 dispositions between 2000 and 2005—1/3 of one percent—versus 15 cases overruling precedent out of 16,729 dispositions between 1994-1999—1/21 of one percent). Leaving aside Justice Kelly's incorrect math, when the actual figures are cited it seems obvious that during both periods the number of cases that were overruled was miniscule when compared with the number of dispositions. The difference between 1/21 of

(continued…)

20

one percent and 1/3 of one percent is an inconsequential statistical difference. It can only be made to look arresting if one stretches for the most alarming way to describe it. That is what Justice Kelly has done here. We invite scrutiny of the study by Mr. Berg because it reinforces, we believe, the point we are making.

In further evaluating Justice Kelly's claim that this Court has overruled more cases than is usual, we would call attention to the difficulties in relying on earlier statistics regarding overruled cases. As explained in *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 567 n 6; 702 NW2d 539 (2005), it was not uncommon for this Court in earlier years to fail to state that cases it was clearly overruling were being overruled. A good example of this practice is set forth in *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 708; 614 NW2d 607 (2000). In *Mudel* this Court expressly overruled *Goff v Bil-Mar Foods, Inc (After Remand),* 454 Mich 507; 563 NW2d 214 (1997), which was decided five years after *Holden v Ford Motor Co*, 439 Mich 257; 484 NW2d 227 (1992). But, *Goff* had failed to acknowledge that it was overruling *Holden.* As we stated in *Mudel*: "Therefore, unlike the unstated but effective overruling of *Holden* in *Goff,* we expressly overrule *Goff*, insofar as it contradicts the statutory language and departs from our decision in *Holden*." 462 Mich at 708. Indeed, Justice Kelly would apparently continue with this approach of not clearly identifying overruled cases. She refers to numerous cases in this Court that rejected the doctrine of legislative acquiescence as "rogue" decisions. *Post* at 15 n 17. But, then she asserts that she would not be overruling such cases if she could persuade three other justices to approve of the discredited legislative acquiescence doctrine. Again, this illustrates the fact that Justice Kelly would not include cases she actually overruled in the list of cases she admitted overruling.

Next, Justice Kelly, to discredit the above analysis, indicates that she would not count cases where we denied leave to appeal in calculating how frequently cases were overruled. Why not? Each case presumably relied on earlier precedent, and when this Court denies leave to appeal, it leaves a precedent intact. See further Justice Markman's concurrence, which provides an excellent and even more thorough response to Justice Kelly's meritless claim.

Finally, in response to Justice Markman's challenge to give her standards for overruling cases, she responds not with an approach, but with a puzzling indication that she would rely on interpretive tools such as the absurd results rule. Whatever the merits of those rules, and they have been discussed at length by this Court in recent years, they have nothing to do with determining when precedent should be overruled. In short, her response is a response to a question not asked. The reader need not be without resources in this situation because Justice Kelly has already tendered an answer. In *Singbon v Chrysler Corp*, 467 Mich 144, 184;

and *Brown* that disrupted the citizens' reliance interest that statutes mean what they say. We refuse to perpetuate the error of *Hobbs* and *Brown*.[15]

MCL 691.1404 is straightforward, clear, unambiguous, and not constitutionally suspect. Accordingly, we conclude that it must be enforced as written. As this Court stated in *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002), "The Legislature is presumed to have intended the meaning it has plainly expressed, and if the expressed language is clear, judicial construction is not permitted and the statute must be enforced as written." Thus, the statute requires notice to be given as directed, and notice is adequate if it is served within 120 days and otherwise complies with the requirements of the statute, i.e., it specifies the exact location and nature of the defect, the injury sustained, and the names of the witnesses known at the time by the claimant, no matter how much prejudice is *actually suffered*.[16] Conversely, the notice provision

---

(…continued)
184 n 9; 648 NW2d 624 (2002), she said she would not reexamine precedent unless the prior decision was "utterly nonsensical," or reflected a "drastic error." We discussed the unworkability of this approach in our response to her in *Sington*.

[15] In dissent Justice Kelly derides our effort to properly construe the statute after previous judicial deconstructions as "second-guessing." Does she really think that we comply with the oaths we took when we do not follow the clear directions of the Legislature in statutes and when we ignore past cases adhering to those directions? We do not. We believe the most defensible approach is to overrule cases when the criteria set forth in *Robinson v Detroit* are satisfied.

[16] Indeed, in *Brown* the road commission was prejudiced because it, unaware that there had been an accident, repaved the road where the accident happened before the 120-day notice period expired. This made no difference in the ability of the plaintiff to proceed with his lawsuit. 452 Mich at 360 n 11.

is not satisfied if notice is served more than 120 days after the accident *even if there is no prejudice*.

## V. RETROACTIVITY

The final question is whether our decision to overrule *Hobbs* and *Brown* should have retroactive effect. As this Court held in *Pohutski v City of Allen Park*, 465 Mich 675, 695-696; 641 NW2d 219 (2002):

> Although the general rule is that judicial decisions are given full retroactive effect, *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986), a more flexible approach is warranted where injustice might result from full retroactivity. *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997). For example, a holding that overrules settled precedent may properly be limited to prospective application.

The threshold question is whether "the decision clearly established a new principle of law." *Id.* at 696. If so, the factors to be considered in determining whether the general rule should not be followed are

> (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. [*Id.*]

In *Pohutski*, this Court gave prospective effect to its decision overruling *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139; 422 NW2d 205 (1988). The Court expressed its concern that the "trespass-nuisance" exception to governmental immunity recognized in *Hadfield* had induced reliance by both governmental agencies and the public, insofar as "municipalities have been encouraged to purchase insurance, while homeowners have been discouraged from doing the same." *Pohutski,* 465 Mich at 697. Further, the Court noted that the

23

then-recently enacted MCL 691.1407, which provided for recovery for a "sewage disposal system event," was prospective only and, therefore, would leave an entire class of homeowners without a remedy. Given these unique considerations, the Court applied *Pohutski* prospectively.

However, in *Wayne Co v Hathcock*, 471 Mich 445; 684 NW2d 765 (2004), this Court overruled *Poletown Neighborhood Council v Detroit*, 410 Mich 616; 304 NW2d 455 (1981), and applied the decision retroactively. The Court explained that "[o]ur decision today does not announce a new rule of law, but rather returns our law to that which existed before *Poletown* and which has been mandated by our Constitution since it took effect in 1963." *Hathcock*, 471 Mich at 484.

Likewise, a decision overruling *Hobbs* and *Brown* will return our law to that which existed before *Hobbs* and which was mandated by MCL 691.1404(1). In *Hathcock*, *supra* at 484-485 n 98, this Court further explained its determination to apply the decision retroactively:

> First, this case presents none of the exigent circumstances that warranted the "extreme measure" of prospective application in *Pohutski* . . . . Second, there is a serious question as to whether it is constitutionally legitimate for this Court to render purely prospective opinions, as such rulings are, in essence, advisory opinions.

Likewise, in the instant case, there exist no exigent circumstances that would warrant the "extreme measure" of prospective application. Unlike in *Pohutski*, no one was adversely positioned, we believe, in reliance on *Hobbs* and *Brown*.

24

In *Devillers v Auto Club Ins Ass'n*, 473 Mich 562; 702 NW2d 539 (2005), this Court overruled *Lewis v Detroit Automobile Inter-Ins Exch,* 426 Mich 93; 393 NW2d 167 (1986), and also applied the decision retroactively.   This Court explained:

> As we reaffirmed recently in *Hathcock*, prospective-only application of our decisions is generally "'limited to decisions which overrule clear and uncontradicted case law.'"  *Lewis* is an anomaly that, for the first time, engrafted onto the text of [MCL 500.3145(1)] a tolling clause that has absolutely no basis in the text of the statute. *Lewis* itself rests upon case law that consciously and inexplicably departed from decades of precedent holding that contractual and statutory terms relating to insurance are to be enforced according to their plain and unambiguous terms.

> Thus, *Lewis* cannot be deemed a "clear and uncontradicted" decision that might call for prospective application of our decision in the present case.  Much like *Hathcock*, our decision here is not a declaration of a new rule, but a return to an earlier rule and a vindication of controlling legal authority—here, the "one-year-back" limitation of MCL 500.3145(1).   [*Devillers,* 473 Mich at 587 (citations and emphasis omitted).]

Likewise, in the instant case, *Reich* was an anomaly that, for the first time, held that notice requirements violated the constitution.  *Carver*, decided one year later, made the contradictory conclusion that such notice requirements did not violate the constitution, but it still invented an "actual prejudice" requirement out of whole cloth.  *Hobbs* and *Brown* adopted the "actual prejudice" requirement from *Carver*, despite the clear lack of that requirement in the statute itself.  As in *Devillers* and *Hathcock*, "our decision here is not a declaration of a new rule, but a return to an earlier rule and a vindication of controlling legal authority"—

25

enforcing the language of MCL 691.1404(1).[17] Further, overruling precedent that usurped legislative power restores legitimacy to the law.

Finally, like the *Ridgeway* Court almost 100 years ago, we are mindful of the fact that the public fisc is at risk in these cases.[18] The decision to expand the class of those entitled to seek recovery against the government should be in the hands of the Legislature. This Court does not have the authority to waive the government's immunity from suit, and tax dollars should only be at risk when a plaintiff satisfies all the prerequisites, including a notice provision, set by the Legislature for one of the exceptions to governmental immunity.

Accordingly, we determine that our decision today to overrule *Hobbs* and *Brown* shall be given full retroactive effect because this decision simply restores due constitutional deference to the language of the statute.

## VI. CONCLUSION

Having overruled *Hobbs* and *Brown* with full retroactivity, we reverse the order of the trial court and the judgment of the Court of Appeals and remand the

---

[17] Thus, we reject Justice Kelly's claim that our decision today is tantamount to a new rule of law.

[18] As we noted in *Mack v Detroit*, 467 Mich at 203 n 18, a central purpose of governmental immunity is to prevent a drain on the state's resources by avoiding even the expense of having to contest on the merits any claim barred by governmental immunity. Accord *Ridgeway v Escanaba*, 154 Mich at 73.

26

case to the trial court for the entry of an order dismissing plaintiff's complaint.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

JOANNE ROWLAND, also known as
JOAN ROWLAND,

      Plaintiff-Appellee,

v                                                                                   No. 130379

WASHTENAW COUNTY ROAD
COMMISSION,

      Defendant-Appellant.

_____

MARKMAN, J. (*concurring*).

Justice Kelly has asserted once more her view that the majority is insufficiently respectful of the precedents of this Court.[1]  I believe it is important to respond.  To assist in this, I have attached a chart that summarizes the 40 cases during the past seven terms in which a precedent of this Court has been overruled

---

[1]  This opinion constitutes my exclusive response to Justice Kelly's criticisms concerning this Court's approach to precedent for I do not join footnotes 8 and 14 of the majority opinion.  In her criticisms, Justice Kelly claims that the majority overturns precedent at an "alarming and unprecedented rate," the majority "exhibits disrespect for stare decisis," the majority is "intent on overturning precedent," the majority has declared itself "more capable of understanding the law . . . than any justice who sat before," the majority has "ordained itself master [of a] higher law," the majority "damages the integrity of the judicial process," and the majority is "alarmingly activist."

and in which the Court majority has been aligned against Justice Kelly.[2] From this chart and from the cases that are referenced therein, I draw the following observations concerning precedent and the current Court:

(1) The dispute between the Court majority and Justice Kelly in these 40 cases is less about attitudes toward precedent than about the substantive merits of the opinions being overruled. That is, Justice Kelly agrees with the opinions being overruled and the justices in the majority do not. There is no evidence in these 40 cases that Justice Kelly, out of regard for stare decisis, has ever sustained a precedent with which she disagrees, merely that Justice Kelly agrees with these precedents.[3] The majority, on the other hand, for reasons summarized in the

---

[2] In three other cases during this same period, the Court overruled precedent, but with a different alignment of justices. *People v Starks*, 473 Mich 227; 701 NW2d 136 (2005); *People v Lively*, 470 Mich 248; 680 NW2d 878 (2004); *People v Moore,* 470 Mich 56; 679 NW2d 41 (2004). These 40 cases occurred against a backdrop of 543 published opinions issued during this same period and more than 18,500 dispositions of applications for leave to appeal.

[3] Justice Kelly asserts that I imply that she would "not have the same respect for stare decisis if majority control of the Court switched" during her tenure. *Post* at 11 n 12. She further asserts that I suggest that she has "refused to overturn precedent merely because [she agrees with it]." *Post* at 18 n 20. Neither of these assertions is accurate. Rather, what I state is that there is simply no evidence one way or the other that Justice Kelly is any more averse to overruling precedent than the majority; there is merely evidence that Justice Kelly is more approving of the precedents that have been overruled by this Court than the majority. A justice's perspective on stare decisis is not evidenced by her willingness to maintain precedents with which she *agrees*, but by her willingness to maintain precedents with which she *disagrees*. As the most recent example of Justice Kelly's willingness to reverse precedents with she actually disagrees, see her opinion in *Haynes v Neshawat*, 477 Mich 29; 729 NW2d 488 (2007),

(continued…)

2

chart,[4] believes that these 40 cases each overrules a precedent of this Court in which the clear language of the law was misconstrued, or in which the policy preferences of the justices were substituted for those of the lawmaker. Thus, the differences among the justices reflected in these cases are focused less on the role of precedent than on the role of the judge in interpreting the law.

(2) Moreover, it is noteworthy that the present majority, over Justice Kelly's dissent, issued the first-ever opinion of this Court that identified a clear standard for determining when a wrongly decided precedent warrants overruling, and recognized that a variety of considerations, including individual reliance interests and the extent to which a past decision has become embedded in the legal fabric, must be evaluated.[5] In anticipation of the day when her own judicial philosophy once again prevails in this Court and she is confronted with the 40 precedents of the present majority, Justice Kelly would do well to share her *own*

---

(…continued)
overruling *Kassab v Michigan Basic Prop Ins Assn*, 441 Mich 433; 491 NW2d 545 (1992).

[4] The summaries obviously cannot do full justice to the issues involved in these cases. These are designed simply to identify the essential issue in controversy in these 40 cases.

[5] *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).

standards concerning when she would or would not overrule such obviously distasteful precedents.[6]

(3) Perhaps the most significant point of the chart is that no meaningful discussion of a court's attitude toward precedent can be based solely on an arithmetical analysis in which raw numbers of overrulings are simply counted. Such an analysis obscures that not all precedents are built alike, that some are better reasoned than others, that some are grounded in the exercise of discretionary judgments and others in the interpretation of plain language, that some are thorough in their analyses and others superficial. The chart demonstrates that the overrulings of precedent occurring during the past seven terms have overwhelmingly come in cases involving what the justices in the majority view as the misinterpretation of straightforward words and phrases in statutes and contracts, in which words that were *not* there were read into the law or words that *were* there were read out of the law.[7] Where such misinterpretation occurs, not

---

[6] In response to this inquiry, Justice Kelly now posits a standard that would assess whether a precedent is "'free from absurdity, not mischievous in practice, and consistent with one another.'" *Post* at 8 n 8 (citation omitted). While at least this is a standard of sorts, it is hard to imagine a standard more deferential to judges and less deferential to the law.

[7] The instant case illustrates this proposition well for Justice Kelly, unlike the justices in the majority, would effectively engraft onto MCL 691.1404 language upholding its 120-day notice requirement only if there was "prejudice caused to the government by the failure to supply notice within such time." Thus, the 120-day notice requirement would sometimes mean what it says and would sometimes not. Whatever the policy merits of Justice Kelly's amendments from
(continued…)

4

only does this Court disregard its duty to interpret the law, eroding the constitutional separation of powers in the process, the Court also overturns compromises made in the legislative process, second-guesses judgments of the lawmaker, and renders the law increasingly arbitrary and unpredictable.

(4) The chart also makes clear that the present court majority has been disciplined in stating expressly when a precedent has been overruled. The majority has never attempted to obscure when a precedent was overruled or to minimize the number of such precedents by dubious "distinguishings" of prior caselaw. Rather, it has been forthright in identifying and critiquing precedents that were viewed as wrongly decided and warranting overruling. As the chart demonstrates, on a significant number of past occasions, the Court left *intact* precedents that were inconsistent with new decisions, essentially allowing future litigants to choose among inconsistent precedents as in columns A and B of a Chinese restaurant menu. For this reason in particular, while it may well be that the present majority has overruled more precedents than its predecessors during some selected equivalent period, this cannot be stated with confidence by Justice Kelly or by anyone else for it has not been demonstrated.[8]

---

(…continued)
the bench, such language nowhere appears within the actual statute enacted by the Legislature.

[8] Justice Kelly identifies 61 overruled precedents during the years in question, rather than the 40 (or 43) we identify. This is because, in several instances, she treats as multiple overrulings an opinion overruling a single
(continued…)

5

(5) The debate in which Justice Kelly wishes to participate is one in which an overruling of precedent, any overruling of precedent, is a "bad" thing and is to be deplored. She is less interested in the far more significant and nuanced debate of when precedents ought to be sustained and when they ought not to be. How does a justice thoughtfully apply the standards set forth in *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000)? How does a justice balance the need to respect precedents with his or her oath in support of the United States and Michigan constitutions? When does a justice weigh his or her obligation to follow the opinions of his or her predecessors with his or her obligation to get the law "right"?[9] There are no simple or pat answers to these questions. The people of Michigan, whose law it is that this Court upholds, may read the decisions

_____

(…continued)

proposition of law that has been reiterated by the Court. Thus, for example, a decision to overrule the standard for granting summary judgment-- a standard articulated in countless opinions of this Court-- might count as an overruling of each of these opinions.

[9] Justice Kelly makes light of what she describes as this Court's belief in its "solemn duty" to "rewrite Michigan case law to 'get the law right.'" *Post* at 10 n 10. Although as *Robinson*, *supra* at 463-468 makes clear, a variety of factors must be considered in evaluating whether to overrule a precedent, I do confess to thinking that "getting the law right" is a rather significant part of this Court's constitutional responsibilities. For Justice Kelly, however, a misreading of the law is apparently acceptable as long as it is "free from absurdity." A rather tolerant standard. I would prefer to hold this Court to a higher standard in interpreting the will of the people and their elected representatives. See also *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 756; 641 NW2d 567 (2002), observing that a legal system in which "the public may read the plain words of its law and have confidence that such words mean what they say" serves many of the same goals as stare decisis.

contained in this chart and determine for themselves whether Justice Kelly or the justices in the majority have served better as stewards of the judicial power under the Michigan Constitution.

Stephen J. Markman

| | Case | Which Overruled | Which in Turn Overruled | Case Holding |
|---|---|---|---|---|
| 1 | *Paige v City of Sterling Hts*, 476 Mich 495; 720 NW2d 219 (2006) | *Hagerman Group v Gencorp Automotive*, 457 Mich 720; 579 NW2d 347 (1998) | *Hagerman* failed to follow *Stoll v Laubengayer*, 174 Mich 701; 140 NW 532 (1913). | The language "the proximate cause," MCL 418.375(2), means "the" proximate cause, not "a" proximate cause. |
| 2 | *People v Anstey*, 476 Mich 436; 719 NW2d 579 (2006) | *People v Koval*, 371 Mich 453; 124 NW2d 274 (1963) | | Dismissal is not the proper remedy for a violation of the statutory right to an independent chemical test because MCL 257.625a(6) does not specify such a remedy. |
| 3 | *Cameron v Auto Club Ins Ass'n*, 476 Mich 55; 718 NW2d 784 (2006) | *Geiger v Detroit Automobile Inter-Ins Exch*, 114 Mich App 283; 318 NW2d 833 (1982); G*eiger* relied on *Lambert v Calhoun*, 394 Mich 179; 229 NW2d 332 (1979) | *Lambert* overruled *Holland v Eaton*, 373 Mich 34; 127 NW2d 892 (1964). | The language "the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action commenced," MCL 500.3145(1), means that a claimant may only recover for damages suffered within 1 year of filing suit. |
| 4 | *Grimes v Dep't of Transportation*, 475 Mich 72; 715 NW2d | *Gregg v State Highway Dep't*, 435 Mich 307; | *Gregg* ignored *Scheurman v Dep't of Transportation*, 434 Mich 619; 456 NW2d 66 | The language "improved portion of the highway designed for vehicular traffic," MCL 691.1402(1), does not include the shoulder because a shoulder is |

| | | | |
|---|---|---|---|
| | 275 (2006) | 458 NW2d 619 (1990) | (1990), and failed to follow *Roy v Dep't of Transportation*, 428 Mich 330; 408 NW2d 783 (1987), and *Goodrich v Kalamazoo Co*, 304 Mich 442; 8 NW2d 130 (1943). | not designed for vehicular traffic. |
| 5 | *Joliet v Pitoniak*, 475 Mich 30; 715 NW2d 60 (2006) | *Jacobson v Parda Fed Credit Union*, 457 Mich 318; 577 NW2d 81 (1998) | *Jacobson* failed to follow *Champion v Nationwide Security, Inc*, 450 Mich 702; 545 NW2d 596 (1996). | The language "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results," MCL 600.5827, means that a claim for a violation of the Civil Rights Act accrues on the actual date the alleged discriminatory acts occur. |
| 6 | *People v Hawthorne*, 474 Mich 174; 713 NW2d 724 (2006) | *People v Jones*, 395 Mich 379; 236 NW2d 461 (1975); *People v Lester*, 406 Mich 252; 277 NW2d 633 (1979), and their progeny | | The language "[n]o judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury . . . unless . . . it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice," MCL 769.26, means that a trial court's failure to instruct on the defense of accident does not require automatic reversal of a defendant's conviction. |
| 7 | *Devillers v Auto Club Ins Ass'n*, 473 Mich 562; 702 NW2d 539 (2005) | *Lewis v Detroit Automobile Inter-Ins Exch*, 426 Mich 93; 393 NW2d 167 (1986) | *Lewis* failed to follow *Dahrooge v Rochester-German Ins Co*, 177 Mich 442; 143 NW 608 (1913). | The language "the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action commenced," MCL 500.3145(1), means that a plaintiff may only recover for damages suffered within 1 year of filing suit. |

| 8 | *Rory v Continental Ins Co,* 473 Mich 457; 703 NW2d 23 (2005) | *Tom Thomas Org, Inc v Reliance Ins Co*, 396 Mich 588; 242 NW2d 396 (1976); *Camelot Excavating Co v St Paul Fire & Marine*, 410 Mich 118; 301 NW2d 275 (1981); *Herweyer v Clark Hwy Services, Inc*, 455 Mich 14; 564 NW2d 857 (1997) | *Tom Thomas* failed to follow *Dahrooge v Rochester-German Ins Co*, 177 Mich 442; 143 NW 608 (1913); *McIntyre v Michigan State Ins Co*, 52 Mich 188; 17 NW 781 (1883); *Law v New England Mut Accident Ass'n*, 94 Mich 266; 53 NW 1104 (1892); *Turner v Fidelity & Cas Co*, 112 Mich 425; 70 NW 898 (1897); *Harris v Phoenix Accident & Sick Benefit Ass'n*, 149 Mich 285; 112 NW 935 (1907); *Friedberg v Ins Co of North America*, 257 Mich 291; 241 NW 138 (1932); *Hall v Metropolitan Life Ins Co*, 274 Mich 196; 264 NW 340 (1936); *Barza v Metropolitan Life Ins Co*, 281 Mich 532; 275 NW 238 (1937); and *Bashans v Metro Mut Ins Co*, 369 Mich 141; 119 NW2d 622 (1963).<br><br>*Herweyer* implicitly overruled *State Farm Mut Automobile Ins* | The language "a claim or suit must be brought within 1 year from the date of the accident" means that a claim or suit must be brought within 1 year from the date of the accident. |

| | | | *Co v Ruuska*, 412 Mich 335; 314 NW2d 184 (1982). | |
|---|---|---|---|---|
| 9 | *People v Bell*, 473 Mich 275; 702 NW2d 128 (2005)* | *People v Miller*, 411 Mich 321; 307 NW2d 335 (1981); *People v Schmitz*, 231 Mich App 521; 586 NW2d 766 (1998) | | Dismissal is not the proper remedy for a violation of the statutory right to a peremptory challenge because MCL 768.13 does not specify such a remedy. |
| 10 | *Garg v Macomb Community Mental Health*, 472 Mich 263; 696 NW2d 646 (2005) | *Sumner v Goodyear Tire & Rubber Co*, 427 Mich 505; 398 NW2d 368 (1986) | | The language "[t]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results," MCL 600.5827, as applied to the three-year period of limitations in MCL 600.5805(10), means that a plaintiff must commence an action within three years of a claimed violation of the Civil Rights Act. |
| 11 | *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192; 694 NW2d 544 (2005) | *People v Tantenella*, 212 Mich 614; 180 NW 474 (1920) | | The ability of a person to collect trebled damages from "[a]nother person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted," MCL 600.2919a, means that the buyer must have actual knowledge that the |

| | | | property in question was "stolen, embezzled, or converted." |
|---|---|---|---|
| 12 | *People v Davis*, 472 Mich 156; 695 NW2d 45 (2005) | *People v Cooper*, 398 Mich 450; 247 NW2d 866 (1976) | *Cooper* failed to follow *Bartkus v Illinois,* 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959). | An "offense" is a violation of the law of a sovereign. Where a defendant by the commission of one act violates the law of two sovereigns, the language "[n]o person shall be subject for the same offense to be twice put in jeopardy," Const 1963, art 1, § 15, does not prohibit two separate sovereigns from prosecuting a defendant for that act. |
| 13 | *People v Young*, 472 Mich 130; 693 NW2d 801 (2005) | *People v McCoy*, 392 Mich 231; 220 NW2d 456 (1974) | | The language "[t]he court shall instruct the jury as to the law applicable to the case . . . as in his opinion the interests of justice may require," MCL 768.29, means that the trial court has discretion to give a cautionary accomplice instruction, but is not mandated to do so. |
| 14 | *Neal v Wilkes*, 470 Mich 661; 685 NW2d 648 (2004) | *Wymer v Holmes*, 429 Mich 66; 412 NW2d 213 (1987) | | The language "a cause of action shall not arise for injuries to a person who is on the land of another . . . for the purpose of . . . outdoor recreational use . . . against the owner . . . of the land . . . ," MCL 324.73301(1), applies to all land used for outdoor recreational use, not just "large tracts of undeveloped land." |
| 15 | *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004) | *People v Anderson*, 389 Mich 155; | | The language "[i]n every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense," Const |

| | | | | |
|---|---|---|---|---|
| | | NW2d 461 (1973) | | 1963, art 1, § 20, means that the right to counsel attaches only to corporeal identifications conducted at or after the initiation of adversarial judicial proceedings. |
| 16 | *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004) | *Omelenchuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000) | | The language "[t]he statutes of limitations or repose are tolled," MCL 600.5856, does not toll the additional period permitted under MCL 600.5852 for filing wrongful death actions because it is not a statute of limitations or repose. |
| 17 | *People v Nutt*, 469 Mich 565; 677 NW2d 1 (2004) | *People v White*, 390 Mich 245; 212 NW2d 222 (1973) | *White* expressly overruled *People v Grimmett*, 388 Mich 590, 607; 202 NW2d 278 (1972); *People v Parrow*, 80 Mich 567; 45 NW 514 (1890); and *People v Ochotski*, 115 Mich 601; 73 NW 899 (1898). | The language prohibiting successive prosecutions of the "same offense," Const 1963, art 1, § 15, means that successive prosecutions are prohibited only where the charged offenses share identical elements. |
| 18 | *Rakestraw v Gen Dynamics Land Systems, Inc*, 469 Mich 220; 666 NW2d 199 (2003) | *Carter v Gen Motors Corp*, 361 Mich 577; 106 NW2d 105 (1960) | | The language "personal injury arising out of and in the course of employment," MCL 418.301(1), means that a claimant must establish both an injury "arising out of" his or her employment and that any symptom, such as pain, complained of by the claimant must be causally linked to such injury, and, thus, where a claimant claims to have suffered an injury whose symptoms are consistent with a preexisting condition, he or she must establish the existence of a work-related injury that extends |

| | | | beyond the manifestation of symptoms of the underlying preexisting condition. |
|---|---|---|---|
| 19 | *Wilkie v Auto-Owners Ins Co,* 469 Mich 41; 664 NW2d 776 (2003) | *Powers v Detroit Automobile Inter-Ins Exch*, 427 Mich 602; 398 NW2d 411 (1986); *Vanguard Ins Co v Clarke*, 438 Mich 463; 475 NW2d 48 (1991) | *Powers* failed to follow *Raska v Farm Bureau Mut Ins Co,* 412 Mich 355; 314 NW2d 440 (1982).<br><br>*Vanguard* failed to follow *Powers* and *Michigan MillersMut Ins Co v Bronson Plating Co,* 445 Mich 558; 519 NW2d 864 (1994). | The language "total limits of all bodily injury liability bonds and policies available to the owner or operator of the underinsured automobile" means the total amount available to the owner, not the amount actually received by the claimant. |
| 20 | *Jones v Dep't of Corrections,* 468 Mich 646; 664 NW2d 717 (2003) | *In re Lane*, 377 Mich 695; 387 NW2d 912 (1966); *Stewart v Dep't of Corrections*, 382 Mich 474; 170 NW2d 16 (1969) | | The relinquishment of the parole board's authority to revoke parole is not the proper remedy for a violation of the statutory right to a hearing within 45 days after the parolee is "returned or is available for return" to prison for a parole violation because MCL 791.240a(1) does not specify such a remedy. |
| 21 | *People v Hawkins*, 468 Mich 488; 664 NW2d 717 (2003) | *People v Sherbine*, 421 Mich 502; 364 NW2d 658 | | An application of the exclusionary rule is not the proper remedy for the seizure of evidence based on either a search warrant issued in violation of MCL 780.653(b) or a bench warrant issued in violation |

| | | | | |
|---|---|---|---|---|
| | | (1984); *People v Sloan*, 450 Mich 160; 538 NW2d 380 (1995) | | MCR 3.606(A) because neither the statute nor the court rule contemplates such a remedy. |
| 22 | *Haynie v Michigan*, 468 Mich 302; 664 NW2d 129 (2003) | *Koester v Novi*, 458 Mich 1; 580 NW2d 835 (1998) | | The language "unwelcome sexual advances, requests for favors, and other verbal or physical conduct of a sexual nature," MCL 37. 2103(i), means that conduct or communication that is gender-based but not sexual in nature does not constitute "sexual harassment" under the Civil Rights Act. |
| 23 | *Rednour v Hastings Mut Ins Co*, 468 Mich 241; 661 NW2d 562 (2003) | *Nickerson v Citizens Mut Ins Co*, 393 Mich 324; 224 NW2d 896 (1975) | *Nickerson* predated the no-fault act. | The language "in, upon, getting in, on, out or off" a vehicle does not include mere physical contact with a vehicle. |
| 24 | *Taylor v Smithkline Beecham Corp,* 468 Mich 1; 658 NW2d 127 (2003) | *Dearborn Independent, Inc v Dearborn*, 331 Mich 447; 49 NW2d 370 (1951) | | MCL 600.2946(5), which states that a drug is not "defective or unreasonably dangerous" if "the drug was approved for safety and efficacy by the United States food and drug administration (FDA), and the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller," does not improperly delegate the legislative power to a federal agency because the FDA's determination regarding the safety and efficacy of drugs has independent significance to, and is made independently of any |

| | | | consideration of, the impact of Michigan tort law. |
|---|---|---|---|
| 25 | *Mack v Detroit,* 467 Mich 186; 649 NW2d 47 (2002) | *McCummings v Hurley Med Ctr,* 433 Mich 404; 446 NW2d 114 (1989) | *McCummings* overruled *Hyde v Univ of Michigan Bd of Regents,* 426 Mich 223; 393 NW2d 847 (1986), and *McCann v Dep't of Mental Health,* 398 Mich 65; 247 NW2d 52 (1976). | The language "[e]xcept as otherwise provided in [the governmental tort liability] act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function," MCL 691.1407(1), means that because the governmental tort liability act does not include a sexual orientation discrimination exception to governmental immunity, the government is immune from tort liability for claims of sexual orientation discrimination. |
| 26 | *Sington v Chrysler Corp*, 467 Mich 144; 648 NW2d 624 (2002) | *Haske v Transport Leasing Inc*, 455 Mich 628; 566 NW2d 896 (1997) | *Haske* overruled *Rea v Regency Olds/Mazda/Volvo,* 450 Mich 1201 (1995). | The definition of "disability" in MCL 418.301(4) as "a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease" means that a workers' compensation magistrate must determine both that the claimant suffered a work-related injury and that the injury has actually resulted in a loss of wage-earning capacity in work suitable to the employee's training and qualifications in the ordinary job market. |

| 27 | *People v Petit*, 466 Mich 624; 648 NW2d 193 (2002) | *People v Berry*, 409 Mich 774; 298 NW2d 434 (1980) | *Berry* interpreted the former GCR 1963, 785.8, which differs from the current MCR 6.425(D)(2)(c). | The language "the court must, on the record . . . give the defendant . . . an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence," MCR 6.425(D)(2)(c), means that the court must give the defendant an "opportunity" to address the court before sentence is imposed; it does not mean that the court must specifically ask the defendant whether he or she has anything to say on his or her behalf. |
|---|---|---|---|---|
| 28 | *People v Hardiman*, 466 Mich 417; 646 NW2d 158 (2002) | *People v Atley*, 392 Mich 298; 220 NW2d 465 (1974). | | Under MRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and, thus, so long as evidence is relevant and admissible, it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences. |
| 29 | *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002) | *People v Jones*, 395 Mich 379; 236 NW2d 461 (1975); *People v Chamblis*, 395 Mich 408; 236 NW2d 473 (1975); *People v Jenkins*, 395 | *Jones* and its progeny failed to follow *Hanna v People*, 19 Mich 316 (1869). | The language "the jury . . . may find the accused . . . guilty of a degree of that offense inferior to that charged in the indictment . . . ," MCL 768.32(1), means that a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the |

| | | | | |
|---|---|---|---|---|
| | | Mich 440; 236 NW2d 503 (1975); *People v Stephens*, 416 Mich 252; 330 NW2d 675 (1982) | | evidence would support it. |
| 30 | *Koontz v Ameritech*, 466 Mich 304; 645 NW2d 34 (2002) | *White v McLouth Steel Products*, decided sub nom *Corbett v Plymouth Twp*, 453 Mich 522; 556 NW2d 478 (1996) | | An employee who had taken a pension benefit in a lump sum has "received" a retirement benefit as defined by MCL 421.27(f)(1) and, therefore, the statute mandates coordination of the employee's unemployment benefits with his or her pension benefits. |
| 31 | *Robertson v DaimlerChrysler Corp*, 465 Mich 732; 641 NW2d 567 (2002) | *Gardner v Van Buren Pub Schools*, 445 Mich 23; 517 NW2d 1 (1994) | | The language "[m]ental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof," MCL 418.301(2), means that, in order to recover workers' compensation benefits, a claimant must demonstrate both that there has been an actual employment event leading to the disability and that the claimant's perception of such actual employment event was reasonably grounded in fact or reality. |
| 32 | *Pohutski v City of Allen Park*, 465 Mich 675; | *Hadfield v Oakland Co* | | The language "this act does not modify or restrict the immunity of the state from tort liability as it |

| | | | | |
|---|---|---|---|---|
| | 641 NW2d 219 (2002) | *Drain Comm'r*, 430 Mich 139; 422 NW2d 205 (1988); *Li v Feldt*, 434 Mich 584; 456 NW2d 55 (1990) | | existed before July 1, 1965," MCL 691.1407, means that the state, not a municipality, may be subject to liability under a common-law exception to governmental immunity. |
| 33 | *Brown v Genesee Co Bd of Comm'rs*, 464 Mich 430; 628 NW2d 471 (2001) | *Green v Dep't of Corrections*, 386 Mich 459; 192 NW2d 491 (1971) | | The language "members of the public," MCL 691.1406, does not include jail inmates who are legally compelled to be in jail. |
| 34 | *MacDonald v PKT, Inc*, 464 Mich 322; 628 NW2d 33 (2001) | *Mason v Royal Dequindre, Inc*, 455 Mich 391; 566 NW2d 199 (1997) | *Mason* failed to follow *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495; 418 NW2d 381 (1988), and *Scott v Harper Recreation, Inc*, 444 Mich 441; 506 NW2d 857 (1993). | Generally, a merchant has no obligation to anticipate and prevent criminal acts against its invitees; rather, a merchant's only duty is to respond reasonably to a specific situation occurring on the premises that poses a risk of imminent and foreseeable harm to identifiable invitees. |
| 35 | *People v Glass*, 464 Mich 266; 627 NW2d 261 (2001) | *People v Duncan*, 388 Mich 489; 201 NW2d 629 (1972) | | The power granted to this Court under Const 1963, art 6, § 5, to "establish, modify, amend and simplify the practice and procedure in all courts of this state" does not extend to enacting court rules that establish, abrogate, or modify the substantive law. |

| | | | |
|---|---|---|---|
| 36 | *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143; 615 NW2d 702 (2000) | *Pick v Szymczak*, 451 Mich 607; 548 NW2d 603 (1996) | *Pick* failed to follow *Scheurman v Dep't of Transportation*, 434 Mich 619; 456 NW2d 66 (1990). | The language "improved portion of the highway designed for vehicular travel," MCL 691.1402(1), does not include traffic control devices, such as traffic signs, that are not part of the actual roadbed itself. |
| 37 | *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691; 614 NW2d 607 (2000) | *Goff v Bil-Mar Foods, Inc*, 454 Mich 507; 563 NW2d 214 (1997); *Layman v Newkirk Electric Ass'n Inc*, 458 Mich 494; 581 NW2d 244 (1998) | *Goff* implicitly overruled *Holden v Ford Motor Co*, 439 Mich 257; 484 NW2d 227 (1992). | The language "the findings of fact made by the commission acting within its power, in the absence of fraud, shall be conclusive," MCL 418.861a(14), does not require the judiciary to examine the magistrate's decision to determine whether that decision is supported by substantial evidence. |
| 38 | *Stitt v Holland Abundant Life,* 462 Mich 591; 614 NW2d 88 (2000) | *Preston v Sleziak*, 383 Mich 442; 175 NW2d 759 (1970) | | Under the common law, an invitee's status is dependent on a visit associated with a "commercial purpose" and "mutuality of interest" concerning the reason for the visit. Where a person is on church premises for purposes other than "commercial purposes," he or she is a licensee and not an invitee. |
| 39 | *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000) | *Fiser v Ann Arbor*, 417 Mich 461; 339 NW2d 413 (1983); *Rogers v Detroit*, 457 | *Dedes* failed to follow *Stoll v Laubengayer*, 174 Mich 701; 140 NW 532 (1913). | The language "the proximate cause," MCL 691.1405, means "the" proximate cause, not "a" proximate cause. |

| | | Mich 125; 579 NW2d 840 (1998); *Dedes v Asch*, 446 Mich 99; 521 NW2d 488 (1994) | | |
|---|---|---|---|---|
| 40 | *People v Kazmierczak*, 461 Mich 411; 605 NW2d 667 (2000) | *People v Taylor*, 454 Mich 580; 564 NW2d 24 (1997) | *Taylor* misconstrued *Taylor v United States*, 286 US 1, 6; 52 S Ct 466; 76 L Ed 951 (1932), and *Johnson v United States*, 333 US 10, 13; 68 S Ct 367; 92 L Ed 436 (1948). | The smell of marijuana emanating from a motor vehicle detected by an officer qualified to identify that odor may establish a "substantial basis" for inferring a "fair probability" that the vehicle contains marijuana and, therefore, the probable cause necessary to justify a search without a warrant of that motor vehicle, pursuant to the motor vehicle exception to the warrant requirement. |

KEY: This chart represents cases decided after January 1, 2000, in which Justice Kelly dissented and in which a majority of the Court voted to overrule a decision. The reasoning of the Court majority is set forth in highly summary form; the reader should refer to the opinion as a whole for clarifying detail.

S T A T E   O F   M I C H I G A N

SUPREME COURT

JOANNE ROWLAND, also known as
JOAN ROWLAND,

      Plaintiff-Appellee,

v                                    No. 130379

WASHTENAW COUNTY ROAD
COMMISSION,

      Defendant-Appellant.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

     I agree with Justice Kelly's well-reasoned opinion concurring in part and dissenting in part and join parts I and II of her opinion, excluding footnotes 8, 10, 12, and 13.

                                        Elizabeth A. Weaver

S T A T E   O F   M I C H I G A N

SUPREME COURT

JOANNE ROWLAND, also known as
JOAN ROWLAND,

      Plaintiff-Appellee,

v                                                                No. 130379

WASHTENAW COUNTY ROAD
COMMISSION,

      Defendant-Appellant.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I agree with the majority's conclusion that defendant was entitled to summary disposition in this case. But my agreement stops there. The majority unnecessarily reaches the issue whether defendant must show actual prejudice in order to bar a claim filed more than 120 days after the date of the injury.

Plaintiff failed to supply defendant with the statutorily required notice specifying "the exact location and nature of the defect, the injuries sustained, and the names of the witnesses known at the time by the claimant. MCL 691.1404(1). Therefore, defendant did not need to show actual prejudice arising from untimeliness of the notice. The lower courts erred in reaching the actual prejudice issue, as does the majority in this Court. The matter should be decided only on the basis of the deficiency of the contents of the notice. By stretching to entertain the timeliness-of-notice issue and, in doing so, by needlessly overturning two more precedents, the majority invites renewed accusations of judicial activism.

## I. THE SPECIFIC NOTICE IN THIS CASE WAS INSUFFICIENT

MCL 691.1404(1) provides:

> As a condition to any recovery for injuries sustained by reason of any defective highway, the injured person, within 120 days from the time the injury occurred, except as otherwise provided in subsection (3) shall serve a notice on the governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant.

Plaintiff sent the following notice to defendant by certified mail:

> Re:    My Client          Joanne Rowland
>         Date of Accident:  February 6, 2001
>         Location:        Intersection of Jennings and Main Street Northfield Township
>         My File No.      4803

> Dear Sir/Madam:

> Please be advised that I have been retained by Mr. [sic] Joanne Rowland to investigate and evaluate a claim for personal injuries that arose out of an incident that occurred on February 6, 2001. This incident occurred at the intersection of Jennings and Main Street in Northfield Township, County of Washtenaw, State of Michigan. Please be advised that I will continue my investigation and if the same is warranted, will pursue a claim for money damages against the responsible agency for jurisdiction [sic] of this roadway. If I do not hear from you within the near future, I will be forced to place this matter into litigation.

To support the notice required by MCL 691.1404(1), plaintiff relies also on a Freedom of Information Act (FOIA)[1] request made by plaintiff's attorney. It provides:

> Re:    My Client          Joanne Rowland
>         Date of Accident:  February 6, 2001
>         Location:        Intersection of Jennings and Main Street Northfield Township

---

[1] MCL 15.231 *et seq.*

2

My File No.          4803

Dear Sir/Madam:

Please be advised that I represent Joanne Rowland who was injured at the above location. Please produce or make available for viewing and copying, any photo logs or video logs maintained by the Washtenaw County Road Commission showing the intersection of Jennings and Main Street.

Please be advised that this letter is being sent to you pursuant to the Freedom of Information Act.

To be sufficient under MCL 691.1404(1), notice must include four components: (1) the exact location of the defect; (2) the exact nature of the defect; (3) the injury sustained; and (4) any witnesses known at the time of the notice. The above quoted letters do not satisfy all four requirements. Glaringly absent is the second requirement. Nowhere in the material provided to defendant did plaintiff indicate the nature of the defect.

Reference to the defect appears in her complaint, where plaintiff claims that she was injured when she tripped and fell on "broken, uneven, dilapidated, depressed and/or potholed areas"[2] in the roadway and crosswalk. But no such information is included in either the notice or the FOIA request. In fact, the notice does not even hint at the conditions alleged in the lawsuit. Nothing found there gives rise to an inference that plaintiff encountered a pothole, and nothing indicates that plaintiff's injuries were caused by broken pavement.

MCL 691.1404(1) specifies that the notice contain an "exact" statement of the defect. Because plaintiff's notice contains no reference at all to the defect, it

---

[2] Plaintiff's Complaint and Demand for Trial by Jury, ¶ 8.

3

certainly does not rise to the level of an exact statement. MCL 691.1404(1) utilizes the mandatory word "shall" in setting forth the four required components of notice.[3] Plaintiff's failure to meet one of the four statutory requirements cannot be excused. Consequently, her claim must be dismissed. I would reverse the Court of Appeals decision and remand the case to the trial court for entry of summary disposition in favor of defendant.

## II. IT IS UNCESSARY TO REACH *HOBBS*[4] AND *BROWN*[5]

The Michigan Supreme Court in *Hobbs* found that the only purpose of the statutory notice provision is to avoid actual prejudice arising from a lack of notice within 120 days. *Hobbs v Dep't of State Hwys*, 398 Mich 90, 96; 247 NW2d 754 (1976). *Hobbs* concluded, "[A]bsent a showing of such prejudice the notice provision contained in MCLA 691.1404; MSA 3.996(104) is not a bar to claims filed pursuant to MCLA 691.1402; MSA 3.996(102)." *Id.* In *Brown*, the Court specifically addressed whether *Hobbs* should be overturned. *Brown v Manistee Co Rd Comm*, 452 Mich 354, 356; 550 NW2d 215 (1996). After due consideration, we retained *Hobbs*'s interpretation of the 120-day requirement:

> We are not convinced that *Hobbs* was wrongly decided. Further, we believe that more injury would result from overruling it than from following it. The rule in *Hobbs* has been an integral part of this state's governmental tort liability scheme for almost two decades. It should not be lightly discarded. Although the law of governmental tort liability in this state has changed over the years,

---

[3] Use of the word "shall" sets forth a mandatory directive, whereas use of the term "may" is permissive. See *Oakland Co v Michigan*, 456 Mich 144, 154 n 10; 566 NW2d 616 (1997) (opinion by Kelly, J.)

[4] *Hobbs v Dep't of State Hwys*, 398 Mich 90; 247 NW2d 754 (1976).

[5] *Brown v Manistee Co Rd Comm*, 452 Mich 354; 550 NW2d 215 (1996).

the continued validity of the *Hobbs* rule will not result in injustice. Rather, a reaffirmance of the rule will maintain the uniformity, certainty, and stability in the law of this state.

Further, we emphasize that the Legislature has not changed the language of § 4 since *Hobbs* was decided. [*Id*. at 366-367.]

In this case, the majority does not direct itself to the contents of the notice. Rather, it jumps directly to the fact that plaintiff provided the notice more than 120 days after the date of injury. However, given that the notice was deficient, the date that plaintiff provided it is inconsequential. Even if plaintiff had given notice within 120 days, under MCL 691.1404(1) defendant would have been entitled to summary disposition.

It is an exception to the rule of governmental immunity that a government agency can be liable in tort for its failure to properly maintain a highway under its jurisdiction. In order to safeguard an agency that might fall within this exception, the Legislature created the precondition of notice in MCL 691.1404(1). *Brown*, 452 Mich at 359. The information in the notice assists the agency in determining what evidence it needs to evaluate the claim. *Id*. at 362. The 120-day requirement ensures that the agency has an opportunity to investigate while the evidence it needs is still available. This is why both *Brown* and *Hobbs* concluded that actual prejudice to the agency because of a lack of timely notice is the only legitimate purpose of the notice provision. *Id*. at 366; *Hobbs*, 398 Mich at 96. Conversely, if the agency can gather the needed evidence and evaluate the claim even though notice is late, the agency is not prejudiced, and the purpose of MCL 691.1404(1) is effectuated.

5

Therefore, when a court reviews a notice, it must first examine its contents. If the contents do not provide the agency with the information necessary for an investigation and evaluation of the claim, the notice is insufficient. This would be true even if the notice were given on the first day after the claimed damage occurred. In this case, the lower courts failed to consider this point and proceeded directly to the final step of the inquiry. There was no need or justification for doing so, given the fatal flaws in the contents of the notice. The lower courts erred in even considering the timeliness issue.

The majority here makes the same error. It does not conduct an individualized review of the contents of the notice. Rather, it focuses on the timeliness issue, reconsiders *Brown* and *Hobbs*, and overturns them.[6]

In order to set these decisions aside, the majority must discuss the constitutional implications of MCL 691.1404. It is a well-accepted rule that an appellate court should not reach a constitutional issue if a case can be decided on other grounds. *J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003); *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). There would be no need to reach the constitutional question if the majority properly focused on plaintiff's failure to provide adequate notice.

---

[6] Regrettably, this action is consistent with the alarming and unprecedented rate at which this majority overturns precedent. See Todd C. Berg, Esq., *Overruling Precedent and the MSC*, Michigan Lawyers Weekly <http://www.michiganlawyersweekly.com/subscriber/archives.cfm?page=MI/06/B 060691.htm&recID=389963> (accessed November 10, 2006).

The result it reaches exhibits disrespect for stare decisis. While we can all agree that the doctrine of stare decisis is not an inexorable command, we also all know that it is the backbone of American justice. It "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v Tennessee*, 501 US 808, 827; 111 S Ct 2597; 115 L Ed 2d 720 (1991).[7]

The United States Supreme Court has observed that "'[t]he doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some "special justification."'" *United States v IBM*, 517 US 843, 856; 116 S Ct 1793; 135 L Ed 2d 124 (1996), quoting *Payne*, 501 US 842 (Souter, J., concurring), quoting *Arizona v Rumsey*, 467 US 203, 212; 104 S Ct 2305; 81 L Ed 2d 164 (1984). Former United States Attorney General Jeremiah S. Black eloquently stated the justification for adherence to precedent when he sat on the Supreme Court of Pennsylvania:

> It is sometimes said that this adherence to precedent is slavish; that it fetters the mind of the judge, and compels him to decide without reference to principle. But let it be remembered that *stare decisis* is itself a principle of great magnitude and importance. It is absolutely necessary to the formation and permanence of any system of jurisprudence. Without it we may fairly be said to have no law; for law is a fixed and established *rule*, not depending in the slightest degree on the caprice of those who may happen to

---

[7] The majority disagrees with my assessment of which issue should be reached first in this case. The respect for stare decisis and the avoidance of unnecessary constitutional issues provide ample reasons to deal with the simple issue of the sufficiency of the notice first. The majority offers no explanation why the first question must be the continued validity of *Hobbs* and *Brown*.

administer it. I take it that the adjudications of this Court, when they are free from absurdity, not mischievous in practice, and consistent with one another, are the law of the land. It is this law which we are bound to execute, and not any "higher law," manufactured for each special occasion out of our own private feelings and opinions. If it be wrong, the government has a department whose duty it is to amend it, and the responsibility is not in any wise thrown upon the judiciary. The inferior tribunals follow our decisions, and the people conform to them because they take it for granted that what we have said once we will say again. There being no superior power to define the law for us as we define it for others, we ought to be a law unto ourselves. If we are not, we are without a standard altogether. The uncertainty of the law—an uncertainty inseparable from the nature of the science—is a great evil at best, and we would aggravate it terribly if we could be blown about by every wind of doctrine, holding for true to-day what we repudiate as false to-morrow. [*McDowell v Oyer*, 21 Pa 417, 423 (1853) (emphasis in original).][8]

---

[8] Justice Markman challenges me to develop my "own standards" concerning when I would overturn precedent. But I have no need to create my own standards when well-reasoned standards have been established in the laws of this country for over 150 years. As noted in *McDowell*, when precedents are "free from absurdity, not mischievous in practice, and consistent with one another," they should be retained. *McDowell*, 21 Pa at 423. I would not lightly adopt new rules to guide my judicial philosophy when traditional tools used by courts throughout their history continue to serve well. In this line, I willingly apply interpretive aids such as the absurd results rule and the legislative acquiescence doctrine to guide my decisions. I regret that the justices constituting the current majority on this Court have abandoned these tools.

The majority states that I fail respond to Justice Markman's challenge to develop my own standard for overturning cases. In questioning what standard I would prefer, the majority shifts the discussion's focus from where it belongs: on its own lack of respect for the rule of stare decisis.

The majority apparently misses the point of my reference to interpretive aids. Quite simply, it dismisses traditional tools and interpretative processes and shows disrespect for the judicial minds that came before it. It then overturns precedent at an unparalleled rate. One discarded tool, legislative acquiescence, is especially relevant to this discussion. If one accepts the premise that the Legislature can and will change the law when it disagrees with a court's interpretation, a court is not tempted to act in its place.

The majority claims that the standard I would apply to decide if stare decisis should be retained is "unworkable." To justify this conclusion, it mischaracterizes and misquotes my dissenting opinion in *Sington v Chrysler Corp*,

(continued…)

No special justification exists in this case to attack the precedent created by *Brown* and *Hobbs*. Rather, the case can be decided on other grounds without upsetting established law or rejecting precedent. When courts stretch to overturn precedent, they destroy the very certainty and stability that stare decisis is designed to protect. Such actions bring disrespect to our Court.

The majority's decision to reject stare decisis in this case conflicts with even its own statement about when such action is appropriate. The majority has indicated that the reasoning of stare decisis should be reexamined only where a holding is """"fairly called into question.""" *Sington v Chrysler Corp*, 467 Mich 144, 161; 648 NW2d 624 (2002), quoting *Robinson v Detroit*, 462 Mich 439, 463; 613 NW2d 307 (2000), quoting *Mitchell v W T Grant Co*, 416 US 600, 627-628; 94 S Ct 1895; 40 L Ed 2d 406 (1974) (Powell, J., concurring). When the Court need not reach an issue in order to make its decision in a case, then that issue has not been fairly called into question.

This Court addressed *Brown* a mere ten years ago. What has changed in that decade to warrant a complete reversal in this law? There is but one answer, the makeup of the Court. The law has not changed. Only the individuals wearing the robes have changed.[9] It is amazing how often the members of this majority

_____

(…continued)
467 Mich 144; 648 NW2d 624 (2002). In fact, the majority uses the same mischaracterization it made in the majority opinion in *Sington*. I will reiterate my point: when precedents are "free from absurdity, not mischievous in practice, and consistent with one another," they should be retained. *McDowell*, 21 Pa at 423.

[9] Ironically, so little else has changed that the very same attorney who argued in *Brown* to overturn *Hobbs* returned to argue this case.

have declared themselves more capable of understanding the law and reaching the "right" result than any justice who sat before.[10] "It is this law which we are bound to execute, and not any 'higher law,' manufactured for each special occasion out of our own private feelings and opinions." *McDowell*, 21 Pa at 423. The majority has ordained itself master of such "higher law."[11] In doing so, it undermines the

---

[10] This is a theme throughout Justice Markman's concurring opinion. He seems to believe that it is the solemn duty of this majority to rewrite Michigan caselaw to "get the law 'right.'" *Ante* at 6. This predisposition to find so much caselaw wrongly decided contributes to the majority's seeming wholesale second-guessing of earlier decisions and renders the law increasingly arbitrary and unpredictable. Appropriate respect for stare decisis and for those who sat on this Court before us would greatly contribute to ending such instability.

I do not fault the majority for wanting to get the law "right." I fault it for repeatedly deciding matters as if only it can reach a correct interpretation of the law. This case provides an example. Two prior incarnations of this Court reviewed the same issue and came to the same decision. The Legislature had decades to change the statute if it believed that *Hobbs* and *Brown* were incorrectly decided, yet it did nothing. But this majority still concludes that the Court's interpretation of the law was "wrong" this entire time. Surely it is not only the four justices currently making up the majority of this Court who are capable of correctly discerning what the Legislature meant.

[11] A quote from Justice Eugene Black seems apropos for this case:

At one time students and citizens, lay and professional, were taught that everyone is presumed to know the law, and hence is duty bound to act in accord therewith. But how may even skilled lawyers, and correspondingly skilled subordinate court judges, "know the law" when they are taught that the law in the books is not law at all, unless upon litigatory test a bare majority of this very ordinary Supreme Court happens to like it? Former Justice VOELKER's latest epigram comes to mind at this point. I quote it from "Laughing Whitefish", p 239 (McGraw-Hill 1965):

"Clapping a black nightshirt on a lawyer and packing him off to the state capital and thenceforth calling him "Mister Justice" makes him no less fallible and uncertain than he was when he was back home drawing five-dollar wills." [*Autio v Proksch Constr Co*, 377 Mich 517, 542-543; 141 NW2d 81 (1966) (Black, J., dissenting).]

10

stability of Michigan's courts and damages the integrity of the judicial process.

*Payne*, 501 US at 827.[12]  I must strenuously dissent from such activity.[13]

---

[12] Justice Markman implies that I would not have the same respect for stare decisis if majority control of the Court switched during my tenure.  This amounts to little more than a circumstantial ad hominem logical fallacy.  (see <http://en.wikipedia.org/wiki/Ad_hominem> [accessed March 9, 2007]).  Nothing in my decade-long tenure as a judge before the current majority was installed substantiates the conjecture that I would indulge in wholesale reversal of precedent if the opportunity arose.  In the end, I am willing to put my "fealty" to stare decisis to the test.  I encourage all who read this opinion to compare my record of adherence to precedent with the majority's.  For assistance in this, I refer the reader to Todd C. Berg, Esq., *Overruling Precedent and the MSC*, *The Justices' Scorecard*, Michigan Lawyers Weekly, <http://www.michiganlawyersweekly. com/subscriber/archivesFTS.cfm?page=MI/06/B060691.htm&recID=389963&Qu eryText=overruling%20and%20precedent%20and%20msc> (accessed December 22, 2006).

[13] The majority characterizes my discussion of their disrespect for stare decisis as a "canard."  Those familiar with this Court know that the majority's unprecedented attack on stare decisis is not a mere groundless rumor.  The numbers do not lie.  The present majority has overturned more than three times as many precedents as did those who immediately preceded it (61 precedents overturned in five years by this majority compared to 18 by its predecessor).  This is despite the fact that the earlier incarnation of the Court disposed of almost 3,000 more cases (13,923 total dispositions by this majority in five years as compared to 16,729 total dispositions by its predecessor).  See Todd C. Berg, Esq., *Overruling Precedent and the MSC*, *The "Pre-1999 Court" vs. The "Majority Court"*, Michigan Lawyers Weekly, <http://www.michiganlawyersweekly.com/subscriber/ archives_FTS.cfm?page=MI/06/B060691.htm&recID=389963&QueryText=overr uling%20and%20precedent%20and%20msc> (accessed December 22, 2006). This disparity is astounding.  Also astounding is the majority's repeated claim that nothing unusual is happening.  If any "canard" exists in this case, it is the majority's insistence that it is not overturning the precedent of this Court at an alarming rate.

The majority denies that it is overturning precedent willy-nilly.  And it takes comfort in comparing the number of precedents the current majority has overturned to the total number of cases the Court has disposed of.  These statistics should offer the majority no solace.  In fact, they should be taken *cum grano salis*. It is true that the majority overturned only one-third of one percent of total dispositions between 2000 and 2005.  But this percentage rate is four times greater than the immediately preceding majority on the Court whose rate of overturning

(continued…)

11

III. EVEN IF THEY SHOULD BE REACHED, *HOBBS* AND *BROWN*
SHOULD NOT BE OVERTURNED

Even if it were proper to reach the 120-day notice requirement in this case, it would not be appropriate to overturn *Hobbs* and *Brown*. Together, these cases represent 30 years of precedent on the proper meaning and application of MCL 691.1404. Such a considerable history cannot be lightly ignored. And the Legislature's failure to amend the statute during this time strongly indicates that *Hobbs* and *Brown* properly effectuated its intent when enacting MCL 691.1404(1).

The primary goal of statutory interpretation is to give effect to legislative intent. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). In both *Hobbs* and *Brown*, the Court identified the intent behind the notice provision as being to prevent prejudice to a governmental agency. "[A]ctual

---

(…continued)

precedent compared to total dispositions was 1/22 of one percent. Berg, *supra.* Beyond this, reference to the overall dispositions is a red herring. The bulk of the Court's dispositions are simple denial orders. This fact makes the total disposition percentage irrelevant. The majority should not receive credit for not overturning precedent when it simply denies leave to appeal. It would have to overturn nearly every precedent in the history of the Court to make this number appear significant in any way. The Todd Berg article makes a strong showing that the current majority on this Court is alarmingly activist.

The majority makes the point that prior incarnations of this Court failed to make explicit when they were overturning precedent. Ironically, in support, the majority cites *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691; 614 NW2d 607 (2000). In *Mudel*, the majority claimed that *Goff v Bil-Mar Foods, Inc (After Remand)* 454 Mich 507; 563 NW2d 214 (1997), implicitly overturned *Holden v Ford Motor Co*, 439 Mich 257; 484 NW2d 227 (1992). As I pointed out in my concurrence/dissent in *Mudel*, *Goff* and *Holden* did not conflict. *Mudel*, 462 Mich at 734 (Kelly, J., concurring in part and dissenting in part). Of those three cases, it was only the majority's decision in *Mudel* that overturned precedent. Far from support for the majority's position, *Mudel* is just another example of the low esteem in which the majority holds stare decisis.

prejudice to the state due to lack of notice within 120 days is the only legitimate purpose we can posit for this notice provision . . . ." *Hobbs*, 398 Mich at 96. For 20 years, the Legislature knew of this interpretation[14] but took no action to amend the statute or to state some other purpose behind MCL 691.1404(1). The Court then readdressed the statute in *Brown* and came to the same conclusion regarding the purpose behind MCL 691.1404(1).

Another ten years have passed, but still the Legislature has taken no action to alter the Court's interpretation of the intent behind the statute. This lack of legislative correction points tellingly to the conclusion that this Court properly determined and effectuated the intent behind MCL 691.1404(1). If the proper intent is effectuated, the primary goal of statutory interpretation is achieved. *In re MCI*, 460 Mich at 411.[15]

The majority heavily criticizes *Brown* for its use of legislative acquiescence as a tool of statutory construction. But these criticisms are not well founded, either logically or legally. The United States Supreme Court recently reaffirmed the use of legislative acquiescence:

---

[14] The Legislature is presumed to be aware of judicial interpretations of existing law. *Ford Motor Co v Woodhaven*, 475 Mich 425, 439-440; 716 NW2d 247 (2006).

[15] The majority accuses me of creating "chaos and injustice" because it believes I do not consistently apply a rational basis analysis. Its heated words on this subject seem designed to distract from the real point: the question is whether *Hobbs* and *Brown* properly effectuated the intent behind the statute. The fact that the Legislature has not taken action to rewrite the law strongly suggests that these cases did properly effectuate this intent. Therefore, they properly arrived at the rational basis behind the notice provision.

[T]he claim to adhere to case law is generally powerful once a decision has settled statutory meaning, see *Patterson* v *McLean Credit Union*, 491 U.S. 164, 172-173, 109 S. Ct. 2363, 105 L Ed 2d 132 (1989) ("Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done"). In this instance, time has enhanced even the usual precedential force[.] [*Shepard v United States*, 544 US 13, 23; 125 S Ct 1254; 161 L Ed 2d 205 (2005).]

This tool of construction has a long history in the law. In 1880, the United States Supreme Court wrote:

> After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment. [*Douglass v Pike Co*, 101 US 677 (11 Otto), 687; 25 L Ed 968 (1880).]

There also exists a consistent and long history of the use of this tool in Michigan. See *Brown*, 452 Mich at 367-368; *Gordon Sel-Way Inc, v Spence Brother Inc*, 438 Mich 488, 505; 475 NW2d 704 (1991); *Craig v Larson*, 432 Mich 346, 353; 439 NW2d 899 (1989); *Wikman v City of Novi*, 413 Mich 617, 638; 322 NW2d 103 (1982); *Smith v Detroit*, 388 Mich 637, 650; 202 NW2d 300 (1972); *Magreta v Ambassador Steel Co*, 380 Mich 513, 519-520; 158 NW2d 473 (1968); *In re Clayton Estate*, 343 Mich 101, 106-107; 72 NW2d 1 (1955); and *Twork v Munsing Paper Co*, 275 Mich 174, 178; 266 NW 311 (1936).

The concept of legislative acquiescence is reasonable and logical. The Legislature is presumed to know the law, including the decisions of this Court. *Ford Motor Co*, 475 Mich at 439-440. Acquiescence in failing to amend a statute

14

is a proper manner by which the Legislature accepts a court's interpretation of that statute.

Our goal in interpreting statutes is to give effect to the purpose behind them. We should not limit ourselves in the use of any tool that gets us to that goal. "If the purpose of construction is the ascertainment of meaning, nothing that is logically relevant should be excluded." Frankfurter, *Some reflections on the reading of statutes,* 47 Colum L R 527, 541 (1947), quoted in Shapiro, *The Oxford Dictionary of American Legal Quotations* (New York: Oxford University Press, 1993), p 390. Legislative acquiescence is one useful tool in ascertaining the intent of a statute.[16] Adequate reasons do not exist to discard it.[17]

---

[16] The majority cites constitutional rational basis analysis when assailing my use of the theory of legislative acquiescence. But the case it cites, *Harvey v Michigan*, 469 Mich 1; 664 NW2d 767 (2003), did not deal with a Court overturning a prior court's interpretation of a statute. An entirely different question entirely arises when, as here, the issue presented is whether a settled statutory interpretation should be overturned.

[17] The majority claims that my support for legislative acquiescence undermines my "fealty" to stare decisis. It supports this by providing a list of decisions made by this majority that reject legislative acquiescence. I dissented from all of those decisions, and I have consistently supported legislative acquiescence as a proper tool for arriving at legislative intent. As I indicated earlier, I would never reach the constitutional issue in deciding this case. Hence, if my view prevailed, I would not find it necessary to consider legislative acquiescence here. But I maintain that this rogue line of cases unnecessarily hamstrings the Court's efforts at arriving at the intent of the Legislature. This position in no way undermines my adherence to stare decisis. There is a significant difference between precedent interpreting a statute relied on for decades and tools used to interpret statutes. I know of no authority that stands for the proposition that stare decisis attaches to analytical tools used in judicial interpretation. Hence, the rule of stare decisis binds us to follow the holdings of past caselaw. It does not bind use to use or refrain from using analytical tools such as the doctrine of legislative acquiescence because an earlier Court chose to do so.

15

The majority argues that *Brown*'s reliance on legislative acquiescence was inappropriate because *Hobbs*'s discussion of the 120-day notice requirement was based, in part, on the requirement's constitutionality. It claims that the Legislature was left incapable of revising the statute even if it desired to do so. This is not accurate. The Legislature was free to amend MCL 691.1404(1).

*Hobbs*'s analysis centered on the fact that the Court could identify only one possible reason for the notice requirement: preventing prejudice to a government agency. *Hobbs*, 398 Mich at 96. If the Legislature had another intent in mind, it had only to write it into the statute.[18] A revised statute would create an entirely new question for the Court. If the Legislature made a revision, the constitutionality of the revision would be an open question. It would not be controlled by *Hobbs*. *Hobbs* merely dealt with a notice provision that had one known intent, fair notice to prevent actual prejudice.

Moreover, if the Legislature truly desired a hard and fast 120-day limit, it could have rewritten the statute to contain a presumption of prejudice.[19]

---

[18] The majority claims that *Hobbs*'s statement that it could posit only one legitimate reason for the notice provision necessarily means that no other legitimate reason could possibly exist. This is not the case. The Court's statement that it could think of only one reason for the statute means what it says. It leaves open the possibility that other reasons might occur to people at a later date. If the Legislature had a different intent in mind, it could have, and should have, made that clear to the Court. It has never attempted to do so. This indicates that the Court's determination of the Legislature's intent was correct.

[19] If, as the majority claims, the Legislature wanted the 120 days to be an absolute deadline, it could have added an irrebuttable presumption of prejudice. This would have satisfied even the most restrictive reading of *Hobbs* while, at the same time, making clear the legislative intent. The Legislature knows how to
(continued…)

Alternatively, it could have defined actual prejudice in the statute to be more restrictive than *Hobbs* found it to be. There was the possibility of change. Because it did not occur, it is reasonable to deduce that the Legislature's inaction has been intentional.

This is especially true in light of *Brown,* which specifically provided the Legislature with a road map showing how it could change the law to effectuate some other intent.

> The difficulty we experienced in *Hobbs* was that we could not posit another purpose for the notice provision other than to prevent prejudice to the state. If the Legislature was not happy with our presumption, it could have responded in some fashion to the *Hobbs* decision. It could have further articulated the notice provision's purpose and possibly have created a presumption of prejudice to the governmental agency from the plaintiffs' failure to give notice within 120 days. However, not only has the Legislature not attempted to revise the statute to respond to *Hobbs*, it also has not even criticized *Hobbs* in later legislative enactments or amendments in the almost twenty years since it was decided. [*Brown*, 452 Mich at 367 n 18.]

If the Legislature disagreed with *Hobbs* but was unsure how to act, *Brown* not only provided the impetus for change but the means to reach that goal. Despite what can fairly be characterized as the Court's guide for possible legislative amendments, the Legislature still has not repudiated *Brown* and *Hobbs*.[20] Given

---

(…continued)
create irrebuttable presuppositions. See MCL 207.1026(1), MCL 205.94q, and MCL 399.157(2). It did not write one into this statute.

[20] The majority postulates that my argument for adherence to stare decisis would have been better made to the *Hobbs* and *Brown* courts. Of course, I was not on the Court when either *Hobbs* or *Brown* was decided. I can only decide the case before me. Reviewing the case before me now, I would maintain my strong predisposition to adhere to precedent. The majority's "two-wrongs-make-a-right" argument carries little weight. It is also grossly unfair to assert, as Justice

(continued…)

17

that ten years have passed since *Brown*, this inaction is particularly meaningful. It evidences that *Brown* and *Hobbs* accurately divined the intent of the Legislature.

## IV. THE *ROBINSON*[21] FACTORS

This Court laid out the factors to consider in overturning stare decisis in *Robinson*. The first consideration is whether the earlier decision was wrongly decided. *Id*. at 464. As discussed above, the Legislature has acquiesced in *Hobbs*'s and *Brown*'s interpretation of MCL 691.1404(1). This certainly suggests that the Court's interpretation properly identified the intent of the Legislature as being to prevent prejudice to a government agency. The central goal of statutory construction is to effectuate the Legislature's intent. *In re MCI*, 460 Mich at 411. It appears that *Hobbs* and *Brown* were correctly decided.

The other *Robinson* factors are: (1) whether the decision at issue defies "practical workability"; (2) whether reliance interests would work an undue hardship if the authority is overturned; and (3) whether changes in the law or facts make the decision no longer justified. *Robinson*, 462 Mich at 464.

*Hobbs* and *Brown* do not defy practical workability. Rather, they have been an integral part of the law on governmental immunity for 30 years. The bench and bar have had no difficulty applying the actual prejudice requirement to

---

(…continued)
Markman does, that I have repeatedly refused to overturn precedent merely because I agreed with the precedent. Whether in agreement or not, I have in each case given heavy weight to the disruption that a reversal would cause to the state's jurisprudence. Frequently, the disruptive effect would have been reason enough for me to refuse to overturn the precedent.

[21] *Robinson*, 462 Mich at 439.

the cases before them. Actual prejudice is not a complicated concept to apply. As such, there is no practical workability problem.

*Brown* addressed the reliance interests a decade ago. It noted:

> [W]e believe that more injury would result from overruling it than from following it. The rule in *Hobbs* has been an integral part of this state's governmental tort liability scheme for almost two decades. It should not be lightly discarded. [*Brown*, 452 Mich at 366.]

Now, another decade has passed. And the rule in *Hobbs* has become even more entwined with the law of governmental liability. Many plaintiffs likely shaped the processing of their cases in reliance on this law. For instance, a plaintiff could take more than 120 days to carefully assess his or her case and assure that the notice provided contains everything required by MCL 691.1404. Attorneys surely have relied on *Hobbs* and *Brown* to decide what cases to accept. This necessarily entails adjusting the attorney's resources to properly handle the cases.

The majority claims that no one would properly rely on *Hobbs* or *Brown* because they are "text ignoring." As I discussed in detail earlier, this is not true. *Hobbs* and *Brown* properly effectuated the intent of the Legislature. But also implicit in this discussion is the majority's contention that attorneys should not rely on precedent predating the present Court. At its core, this statement suggests that one should not rely on anything predating the current majority. The disrespect it pays to past justices of the Michigan Supreme Court is unfortunate. Rather than justifying overturning *Hobbs* and *Brown*, it demonstrates that the majority fails to respect the rule of stare decisis as applied to cases that predate this majority.

The final consideration under *Robinson* is whether changes in the law or facts make the decision no longer justified. *Robinson*, 462 Mich at 464. There have been no changes in the law or facts in question. Although the *Hobbs* ruling is 30 years old and the *Brown* ruling provides a road map for the Legislature to overturn *Hobbs*, the Legislature took no action. This favors retention of the precedents.

Considering all the *Robinson* factors, *Hobbs* and *Brown* should not be overturned. Rather, they should be retained, thereby respecting stare decisis, a doctrine that carries such persuasive force that courts have traditionally required a departure from it to be supported by special justification. *IBM*, 517 US at 856. After consideration and application of the *Robinson* factors, it is apparent that no special justification exists to overturn *Hobbs* and *Brown*, and the majority's decision to do so is erroneous.[22]

## V. RETROACTIVITY

Generally, judicial decisions are given full retroactive effect. *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002). But there are well-established exceptions to this rule. The courts should consider the equities involved and, if injustice would result from full retroactivity, should adopt a more

---

[22] The majority believes that *Robinson* presents the most defensible approach to deciding when to overturn cases. I would note that even the *Robinson* factors support retaining *Hobbs* and *Brown*.

flexible approach. *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997). Court decisions should have the goal of reaching justice. *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1984), quoting *Williams v Detroit*, 364 Mich 231, 265; 111 NW2d 1 (1961) (opinion by Edwards, J., for reversal). Prospective application is appropriate where the holding overrules settled precedent. *Lindsey*, 455 Mich at 68.

> This Court adopted from *Linkletter v Walker*, 381 US 618; 85 S Ct 1731, 14 L Ed 2d 601 (1965), three factors to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. In the civil context, a plurality of this Court noted that *Chevron Oil* [*Co*] *v Huson*, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), recognized an additional threshold question whether the decision clearly established a new principle of law. [*Pohutski*, 465 Mich at 696 (citation omitted).]

When the threshold question is applied, it becomes apparent that this case states a new rule of law. When a court overturns precedent interpreting a statute, the decision is equivalent to, and is treated as, a new rule of law. *Id*. at 696-697. Because this case overturns decades of precedent, it is a newly created rule of law that warrants prospective application.

The majority characterizes its decision as a return to the correct interpretation of the statute and, as such, not a new rule. This argument does not ring true. *Hobbs* was decided 30 years ago. And, as the majority concedes, *Hobbs* was built, in part, on *Reich v State Hwy Dep't*, 386 Mich 617; 194 NW2d 700 (1972). Therefore, the majority is treating almost 35 years of precedent as if it never existed. But decades of reliance on this line of cases have elapsed, and these

21

cases have shaped modern governmental immunity law. Because of it, prospective application is appropriate. *Pohutski*, 465 Mich at 696-697; *Lindsey*, 455 Mich at 68.

The majority also characterizes *Hobbs* as a rogue decision, a departure from the proper interpretation of the law. As I have discussed, the Legislature chose not to amend MCL 691.1404 despite ample opportunity to do so. This indicates that *Hobbs* effectuated legislative intent. But, beyond this, *Hobbs* is not a rogue decision. Supporting this is the fact that the Court took a second look at *Hobbs* in *Brown*. Decades apart, two incarnations of this Court looked at the same question and reached the same conclusion. *Hobbs* cannot fairly be characterized as some anomaly in the law.

The 30 years of precedent offered by *Hobbs* and the affirmance of *Hobbs* in *Brown* demonstrate that the majority is overturning a well-established rule of law. As such, this case creates new law. *Pohutski*, 465 Mich at 696-697. And prospective application is appropriate. *Id*.; *Lindsey*, 455 Mich at 68.

Given that the threshold has been met, we must address the underlying factors. Turning to the first *Pohutski* factor, the Court must decide the purpose served by the new rule. The majority's goal is to correct a statutory interpretation that it believes to be incorrect. Prospective application furthers such a purpose. *Pohutski*, 465 Mich at 697.

The second factor is the extent of reliance on the rule. *Pohutski*, 465 Mich at 696. Given that the rule has been in existence and applied for over 30 years, reliance is significant. *Hobbs* has shaped how attorneys handle cases. Under

22

*Hobbs,* attorneys understand that they have increased time to investigate and perfect their knowledge of a case before taking legal action. This is important given the detail needed to comply with MCL 691.1404(1).

The majority contends that people have not relied on *Hobbs* given the recent decisions of this Court. But I question that contention. As Justice Jeremiah S. Black noted over 150 years ago:

> The inferior tribunals follow our decisions, and the people conform to them because they take it for granted that what we have said once we will say again. There being no superior power to define the law for us as we define it for others[.] [*McDowell*, 21 Pa at 423.]

To hold otherwise is to disregard the importance of this Court. "'We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights.'" *Chevron Oil Co*, 404 US at 107, quoting *Griffin v Illinois*, 351 US 12, 26; 76 S Ct 585; 100 L Ed 891 (1956) (Frankfurter, J., concurring). The majority engages in such a legal fiction in this case. It is inappropriate.

The third factor is the effect of retroactivity on the administration of justice. *Pohutski*, 465 Mich at 696. In *Pohutski,* the Court determined that the third factor weighed in favor of prospective application. The reason for this is that retroactivity would create a distinct class of litigants being denied relief because of an unfortunate circumstance of timing. *Id*. at 698-699. In the instant case, the majority's decision to overturn *Hobbs* and *Brown* will not have such a devastating effect on a distinct group of litigants. But the effect will be considerable. There will be a significant number of plaintiffs who will lose their remedy due to their

23

failure to anticipate this change in the reading of MCL 691.1404(1). And it will cause attorneys to reevaluate and amend their handling of governmental immunity cases. Because of this significant impact, I believe this factor favors prospective application.

The overturning of *Hobbs* and *Brown* is a more significant change in the law than the majority wishes to admit. Application of the *Pohutski* factors indicates as much. Consideration of these factors supports only prospective application of this decision.

## VI. CONCLUSION

The majority unnecessarily reaches the issue whether defendant must show actual prejudice to bar a claim filed more than 120 days from the date the injury occurred. Plaintiff failed to supply sufficient notice to defendant. She did not provide an "exact" description of the nature of the defect. Because of that, defendant did not need to show actual prejudice. It was entitled to summary disposition no matter when the notice was given. The lower courts erred in considering the issue of actual prejudice, as does the majority of this Court.

In reaching to overturn *Hobbs* and *Brown,* the majority fails to pay proper respect to the doctrine of stare decisis and to the precedent of this Court. This continues a disturbing trend that the current majority has initiated and fostered. *Hobbs* and *Brown* properly effectuated the intent of the Legislature. As such, they should be retained.


Marilyn Kelly

24

S T A T E   O F   M I C H I G A N

SUPREME COURT

JOANNE ROWLAND, also known as
JOAN ROWLAND,

      Plaintiff-Appellee,

v                                No. 130379

WASHTENAW COUNTY ROAD
COMMISSION,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

Today this Court overrules a portion of our governmental immunity law that has been in place for over 30 years. Because I am not convinced that *Hobbs v Dep't of State Hwys*, 398 Mich 90; 247 NW2d 754 (1976), and *Brown v Manistee Co Rd Comm*, 452 Mich 354; 550 NW2d 215 (1996), were wrongly decided, I dissent from the majority's decision to overrule these cases. I believe that the principles of stare decisis mandate that we continue to interpret MCL 691.1404(1) in accordance with *Hobbs* and *Brown*.

*HOBBS* AND *BROWN* SHOULD BE REAFFIRMED

It is well established that overruling precedent must be undertaken with caution. This Court does not lightly overrule settled decisions construing any section of a standing statute. *Smith v Lawrence Baking Co*, 370 Mich 169, 177; 121 NW2d 684 (1963). Adhering to decided cases is generally "'the preferred

course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Robinson v Detroit*, 462 Mich 439, 463; 613 NW2d 307 (2000), quoting *Hohn v United States*, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998). Before this Court overrules a decision deliberately made, it should be convinced not merely that the case was wrongly decided, but also that overruling it will result in less injury than in following it. *McEvoy v Sault Ste Marie*, 136 Mich 172, 178; 98 NW 1006 (1904).

Before overruling established precedent, this Court must decide whether: "(1) the earlier case was wrongly decided, (2) the earlier case defies practical workability, (3) reliance interests would work an undue hardship if the earlier case was overruled, and (4) changes in the law or facts no longer justify the earlier decision." *Robinson v Detroit,* 462 Mich 439, 464-465; 613 NW2d 307 (2000). Under *Robinson*, the first conclusion this Court must reach before overruling precedent is that the earlier case was wrongly decided. A majority of this Court considered this very issue 11 years ago and concluded that *Hobbs* was not wrongly decided. *Brown*, *supra* at 366. I continue to agree with the conclusion reached in *Brown*. These cases are part of a 30-year-old line of decisions. The line of cases preceding *Hobbs* and *Brown* provide the proper context in which to evaluate them.

The cases leading up to *Hobbs* and *Brown* represent thoughtfully made, deliberate decisions. I disagree with the majority's implication that before 1970,

2

the constitutionality of notice provisions was firmly established. *Ante* at 8. According to the majority, *Grubaugh v City of St Johns*, 384 Mich 165; 180 NW2d 778 (1970), represented an "abrupt departure" in finding that a 60-day notice provision violated due process where a plaintiff had been incapacitated during the notice period because of the allegedly tortious conduct of defendant. *Ante* at 8; 384 Mich at 175-176. In fact, *Grubaugh* afforded us the first opportunity to consider the constitutionality of the notice provision—this issue had not been squarely presented in previous cases. *Id.* at 167. Two cases that closely preceded *Grubaugh*, *Boike v City of Flint*, 374 Mich 462; 132 NW2d 658 (1965), and *Trbovich v Detroit*, 378 Mich 79; 142 NW2d 696 (1966), make clear that their decisions to enforce the notice provisions as written were not constitutionally based. "The constitutionality of section 8, [which is the provision requiring that notice of injury be given to city within 60 days,] insofar as it applies to infants or others under legal disability, has not as yet been put to test." *Boike*, *supra* at 464 n*. Similarly, Justice Black's supplemental opinion in *Trbovich* remarked that the Court was bound to apply plainly written notice statutes as written, given that no constitutional question had been raised below. *Trbovich*, *supra* at 88.

It is disingenuous for the majority to characterize *Grubaugh* as an aberration, while implying that the previous decisions of this Court had endorsed the constitutionality of the notice statutes with an "implicit" rational basis review. *Ante* at 8. This Court does not ordinarily rule on the constitutionality of a statute if the question of its constitutionality was not raised in the lower court or this Court.

3

*Ridenour v Bay Co*, 366 Mich 225, 243; 114 NW2d 172 (1962). The question presented in *Moulter v Grand Rapids*, 155 Mich 165; 118 NW 919 (1908), was one of statutory construction, not constitutionality; while the appealing party claimed that the notice provision was unreasonable and void, we disclaimed any authority to decide the statute's reasonableness. *Id.* at 169. If we had actually engaged in a rational basis review of the notice statute in *Moulter*, the reasonableness of the statute would have been a fundamental part of the inquiry. The test to determine whether legislation enacted pursuant to the police power comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective. *Shavers v Attorney General*, 402 Mich 554, 612; 267 NW2d 72 (1978).

Unlike *Moulter* and its successors, *Grubaugh* undertook a thorough constitutional analysis of the notice requirements of the general highway statute.[1] This Court concluded that the notice provision of the general highway statute violated due process where it extinguished the claim of a plaintiff who was mentally or physically incapacitated during the notice period due to the alleged tortious act of a state or municipal defendant. *Grubaugh*, *supra* at 176. Because the case was disposed of on due process grounds, the equal protection argument was not examined. *Id.* at 176-177.

---

[1] Specifically, *Grubaugh* concerned a predecessor to MCL 691.1401 *et seq.*: 1948 CL 242.8, repealed and superseded by 1964 PA 170.

4

Shortly after *Grubaugh*, we considered a broader constitutional challenge to a 60-day notice provision of the general highway statute[2] in *Reich v State Hwy Dep't*, 386 Mich 617; 194 NW2d 700 (1972).  This Court followed *Grubaugh* in holding that the statute violated due process as applied to minors.  *Reich*, *supra* at 622.  As for the remaining plaintiffs, who were presumably competent adults, we held that the notice provision violated equal protection because it arbitrarily and unreasonably split victims into two differently treated subclasses: victims of governmental negligence and victims of private negligence.  *Id.* at 623.

This Court subsequently held that notice requirements are not necessarily unconstitutional if there is a legitimate purpose and the period is not unreasonably short.  *Carver v McKernan*, 390 Mich 96, 100; 211 NW2d 24 (1973).  The reasonableness of a period depends in part on the purpose served by the notice requirement.  *Id.*  We noted that failure to give notice may result in prejudice to the government relating to the purpose served by the notice provision.  *Id.*  Thus, the government is required to show prejudice before a claim can be dismissed on the basis of failure to meet the notice requirement.  *Id.*

We should be mindful of this history when considering the *Hobbs* and *Brown* decisions.  When this Court addressed the 120-day notice requirement of MCL 691.1404 in *Hobbs*, we examined the notice provision and the reasons justifying it in light of the *Grubaugh*, *Reich*, and *Carver* decisions.  This Court

---

[2] *Reich* concerned the notice requirement of 1964 PA 170.

5

deliberately concluded that actual prejudice to the state from lack of notice within 120 days was the only legitimate purpose it could posit for the notice provision of § 1404. *Hobbs*, *supra* at 96. Accordingly, unless actual prejudice is shown, the plaintiff's claim is not barred by failure to give notice within the required period. *Id.* In *Brown*, we invalidated a statute on equal protection grounds because it imposed a 60-day notice requirement for claims involving county road commissions when MCL 691.1404, providing a 120-day notice period, also potentially governed the claim. *Brown*, *supra* at 363-364. After deciding that the 120-day period of § 1404 applied, we reaffirmed *Hobbs*'s interpretation of that provision. *Id.* at 368.

The majority contends that the notion that notice provisions are or may be unconstitutional has "no claim to being defensible constitutional theory." *Ante* at 13. But it is this Court's role to construe statutes to avoid unconstitutionality, if possible, by a reasonable construction of the statutory language. *United States v Harriss*, 347 US 612, 618; 74 S Ct 808; 98 L Ed 989 (1954). The validity of the *Hobbs* and *Brown* decisions must be evaluated in view of our earlier constitutional rulings in *Grubaugh*, *Reich*, and *Carver*. With due consideration of this Court's precedent in the area of government notice provisions, the *Hobbs* Court made a reasoned decision that the 120-day notice provision might be unconstitutional if dismissal did not serve the posited purpose of avoiding prejudice. Like *Hobbs* and its predecessors, the primary concern in *Brown* was

6

the constitutionality of a legislative scheme that draws arbitrary distinctions between litigants.

Michigan is not the only jurisdiction that has invalidated notice provisions on constitutional grounds. While it certainly represents a minority position, decisions in Nevada, Iowa, Minnesota, West Virginia, and Washington have also held governmental immunity notice provisions constitutionally infirm.[3] Still others have enforced notice provisions after "engrafting" exceptions for minority or incapacity to avoid unconstitutionality. In *Schumer By and Through Schumer v City of Perryville*, 667 SW2d 414, 418 (Mo, 1984), the court noted that it had previously held the application of the notice provision to incapacitated persons unconstitutional; in the case at hand, it extended this rationale to people who were under the legal disability of minority during the notice period. As evidenced by these decisions, these states, as well as Michigan before the instant case, certainly considered the idea that notice provisions may be unconstitutional to be a defensible constitutional theory.

Further, as Justice Kelly discusses at length, the Legislature has acquiesced with our construction of MCL 691.1404 since the *Hobbs* decision, including our presumption of the statute's sole purpose. *Ante* at 12-15. If the Legislature did

---

[3] *Turner v Staggs*, 89 Nev 230, 234-235; 510 P2d 879 (1973); *Miller v Boon Co Hosp*, 394 NW2d 776, 781 (Iowa, 1986); *Kelly v City of Rochester*, 304 Minn 328, 333; 231 NW2d 275 (1975); *O'Neil v City of Parkersburg*, 160 W Va 694, 701-702; 237 SE2d 504 (1977); *Hunter v North Mason High School*, 85 Wash 2d 810, 818-819; 539 P2d 845 (1975).

not agree with our presumption, in the 31 years since *Hobbs* was decided, it could have easily responded by elaborating on the other governmental interests served by the notice provision. The *Hobbs* decision did not foreclose the possibility that the notice provision served other legitimate state interests other than prejudice; it merely stated that this Court could only posit one purpose. *Hobbs*, *supra* at 96. If the Legislature had responded in any way to our inference, we would have had reason to reevaluate the constitutionality of MCL 691.1404 in light of the Legislature's action.

THE REMAINING *ROBINSON* FACTORS SUPPORT UPHOLDING *HOBBS* AND *BROWN*

Even if a majority of this Court disagrees with the reasoning of *Hobbs* and *Brown*, a mere belief that these cases were wrongly decided is insufficient to justify overruling them. Other considerations must be weighed before departing from precedent. In particular, under *Robinson*, this Court must also decide whether *Hobbs* and *Brown* defy practical workability, whether reliance interests would cause an undue hardship, and whether changes in the law or facts no longer justify *Hobbs* and *Brown*. *Robinson*, *supra* at 464. A study of these remaining *Robinson* factors shows that they weigh in favor of upholding *Hobbs* and *Brown*.

The rule that the government must show actual prejudice was suffered from lack of notice does not defy practical workability. Indeed, this rule has been followed and enforced for over 30 years. In that span, litigants, attorneys, and courts have been able to apply *Hobbs* and *Brown* to the cases before them.

8

Reliance interests of these parties also support upholding these cases. While a plaintiff is unlikely to deliberately withhold notice longer than 120 days for the sheer purpose of using the *Hobbs* rule, these plaintiffs should not be our only concern. We must also consider the effect of our decision on injured parties who have sought legal counsel to determine whether they have a valid claim. For example, reliance interests are involved when a plaintiff consults with an attorney and initiates a claim more than 120 days after an injury, having been informed by his attorney that the claim may survive if the government has suffered no prejudice from the delay. Similarly, attorneys who have counseled clients that their claims may still be valid have relied on *Hobbs* and *Brown* in accepting cases and dispensing advice.

Finally, there have been no changes in the law or factual circumstances that render *Hobbs* and *Brown* unjustifiable. The Legislature has not amended § 1404 since 1972. The *Hobbs* rule has been an established part of the governmental tort liability scheme for over three decades. *Brown* examined *Hobbs* and upheld its rule just over ten years ago. Any relevant changes are entirely internal to this Court.

Applying the *Robinson* factors here shows that the principles of stare decisis outweigh the arguments for overruling *Hobbs*. "Under the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction become precedent and should not be lightly departed." *People v Jamieson*, 436 Mich 61, 79; 461 NW2d 884 (1990). Absent the rarest

9

circumstances, we should remain faithful to established precedent. *Brown*, *supra* at 365. Reaffirming *Hobbs* and *Brown* would promote uniformity, certainty, and stability in the law.

TODAY'S DECISION SHOULD APPLY PROSPECTIVELY

Given that *Hobbs* and *Brown* have become ingrained in our governmental tort liability scheme, the majority's decision to overrule these cases should be applied prospectively. While the general rule is that judicial decisions are given complete retroactive effect, decisions that overrule clear and uncontradicted caselaw have been given prospective application. *Michigan Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 189; 596 NW2d 142 (1999). A more flexible approach is warranted where injustice might result from full retroactivity. *Gladych v New Family Homes, Inc*, 468 Mich 594, 606; 664 NW2d 705 (2003). To determine whether to depart from the general rule of retroactivity, this Court has recognized a threshold question of whether the decision clearly established a new principle of law, in addition to considering several other factors. *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002). These factors include: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. *Id.*

Since *Hobbs* was decided, the law in Michigan has been that claimants may maintain claims against governmental agencies, despite failure to give notice within 120 days, if the agency cannot show that it was prejudiced by the lack of notice. Today's decision represents a departure from an established rule of law.

10

We have not foreshadowed any change of this particular rule—on the contrary, it was specifically reaffirmed by *Brown* ten years ago.  Further, parties who have relied on *Hobbs* in pursuing claims against governmental agencies will now find their claims dismissed.  Attorneys who have taken clients and developed cases with *Hobbs* in mind will have lost the time and effort expended, as well as the confidence of their clients.  Under these circumstances, prospective application of today's decision is appropriate.

## CONCLUSION

In conclusion, I dissent from the majority's decision to overrule *Hobbs* and *Brown*.  I would not disturb these decisions in light of the principles of stare decisis.  Further, overruling these cases presents a new rule of law, thus I would apply the majority's decision prospectively.

Michael F. Cavanagh